Aubrey Joe **JAFFRION**, alias, Joe Jafrion, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46584.

Court of Criminal Appeals of Texas.

Nov. 21, 1973.

————◆————

Paul T. Holt, Austin, for appellant.

Robert O. Smith, Dist. Atty., Larry Laden, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

REYNOLDS, Commissioner.

Following a jury verdict of guilty of the offense of assault with intent to commit rape and court-assessed punishment of twenty years confinement, the appellant challenges the conviction on four grounds of error presented by appointed appellate counsel and on five grounds of error assigned by appellant in a pro se brief. The alleged errors are without that merit required for reversal.

To place the grounds of error in the proper perspective, an evidential recapitulation is necessary. The evidence was adduced through the State's witnesses; the appellant did not testify and relied on no witnesses other than those called by the State.

The appellant, whose name is shown as Aubrey Lee Jaffrion alias Joe Jofrion in the court papers and who signs his name as Aubrey Lee Joffrion, was the manager of the Cock and Bull Lounge in Travis County. The prosecutrix, a twenty-year-old married woman who had been seeking work to secure rent money prior to commencement of a regular job on February 1, 1972, accepted lounge employment from the appellant, beginning Saturday, January 29. Her Sunday shift ended at 10 p. m., but since the lounge remained open until midnight and she still was in need of rent money, she elected to work the additional two hours, at which time the appellant agreed to pay her the wages she had earned. At midnight, the last two customers left, the appellant locked the door, and counted the money in the cash register. Then the appellant came around the bar with the money and a gun to the door where the prosecutrix was putting on her coat preparatory to leaving. She and the appellant engaged in a conversation. The prosecutrix remarked that she was afraid of guns. The appellant inquired about the rent money and, following the prosecutrix's reply that it had been taken care of and if necessary she could see her parents, the appellant asked if she wanted him to pay her rent. Upon being refused, the appellant kept suggesting that he pay the rent. The prosecutrix stated that she then ". . . finally realized it was a proposition to stay there, and I told him no, that to please let me go, and he argued, argued, and I kept saying no, and I asked him to let me go . . . but . . . all of a sudden he got a grim look on his face, pulled out the gun and told me he was not asking me any more, he was telling me and that I should take off all my clothes." The prosecutrix backed away, asking appellant to let her go, but he kept approaching her with the gun and demanding that she take off her clothes. The appellant, pointing the gun at the prosecutrix, kept repeating, ". . . all right, come on. I don't want any, I don't want to mess around. Take your clothes off. . . ." She disrobed and, responsive to her crying, the appellant told her if she made any noise, ". . . he was going to blow my head off."

The appellant fondled her breasts, making remarks to the effect that he had wanted to see whether she was as big busted as he had heard. Appellant then told the prose-

cutrix to get on the pool table. She did. She was crying and appellant threatened to shoot her if she made a sound. Appellant got on the table with her. He asked if she was worried about getting pregnant; she does not remember her reply; and then " . . . he said something about he was already finished, or something, and then he tried to have intercourse anyway." She did not know if the appellant actually effected penetration.

The appellant, who had been very calm during these events, got down from the pool table and became very nervous. The prosecutrix asked for and received appellant's permission to go. She got down from the pool table and started toward her clothes. She heard a shot. She does not think appellant was shooting at her. When she picked up her clothes there were holes in the garments that were not there when she took them off.

Upon production of the garments, the defense objected to the exhibits "unless they are relevant in some way," and objected to their introduction in evidence and "to the assertion by the State's attorney that those are bullet holes. . . ." The trial judge, remarking outside the hearing of the jury that it was not stated to the jury that they are bullet holes, overruled the objection and admitted the clothing in evidence.

Respecting this stage of the events, the record reveals the following occurred during the cross-examination of the prosecutrix:

"Q. You got dressed and then you left?

"A. No, sir. There was some conversation. He was mainly doing all the talking. He kept saying that he was going to kill himself. He was sorry. And he said, he kept saying, I kept asking him was he going to let me go, and he said yes, he was going to let me go and I told him, he said, I

know you are going to go to the police, and I'm going to kill myself because I can't go back to the penitentiary. He kept saying that over and over. And then he said how lonesome he was and if he went back to the penitentiary, he would die.

"Q. Now, ——"

At this point, appellant's trial counsel asked for permission to approach the bench, and the record shows that a conference was held at the bench. The record does not show any objection made to, or any request for the court to take any action concerning this testimony. Following the conference, the cross-examination was resumed.

After the prosecutrix dressed, the appellant unlocked the door and she left in her car, the appellant following for some distance in another car. On the way to her home, the prosecutrix saw, but made no outcry to, a policeman for fear that the appellant, whose vehicle was then adjacent to her car, would shoot her. Arriving home, she related the occurrence to her roommate, who called another couple, one of whom called the police.

■ With the first ground of error, the sufficiency of the evidence to sustain the conviction is challenged, there being stressed the proposition that appellant's statements of "I don't want any, I don't want to mess around" negative the intent to commit rape. Appellant's statements, when considered in context, as they must be, did not disprove an intent to commit rape, particularly since the declarations were followed by his attempt "to have intercourse anyway." The statements were merely a part of the interrelated circumstances bearing on, and presenting a jury issue of, appellant's intent. The fact that there may have been no penetration and rape was not committed is not determinative of intent, because the crime charged is completed when there is an assault with

the intent to commit rape notwithstanding the subsequent abandonment of the intention. Kidwell v. State, 126 Tex.Cr.R. 253, 70 S.W.2d 724 (1934). It was reasonable for the jury to conclude from appellant's conduct in the light of the facts and circumstances shown that he made an assault with the present intention to commit the crime of rape, which he was in a position to complete, despite the resistance of the prosecutrix. See Douthit v. State, 482 S.W.2d 155 (Tex.Cr.App.1971); Willis v. State, 473 S.W.2d 200 (Tex.Cr.App.1971); Melton v. State, 442 S.W.2d 687 (Tex.Cr. App.1969).

■ Appellant, by the fifth ground in his pro se brief, also questions the sufficiency of the evidence, but on the premise that the testimony of the prosecutrix was required to be, but was not sufficiently corroborated. The prosecutrix's testimony, found to be credible by the jury, is sufficient to sustain the conviction for the crime of assault with intent to rape. Thomas v. State, 466 S.W.2d 782 (Tex.Cr. App.1971); Johnson v. State, 449 S.W.2d 65 (Tex.Cr.App.1969). Both grounds are overruled.

The second ground of error is that the charge omitted, over appellant's timely written objection, a positive or affirmative charge concerning the absence of force or intent. The thrust of the argument is that, although the court was not enlightened by the submission of a requested special charge, the court should have utilized the instruction found at 4 Branch's Ann.P.C. 2d, Section 1187.1, page 216, or one similar thereto, because the appellant was entitled to the submission of all defensive theories raised by the evidence.

The instruction now contended for was taken from the charge given in Kidwell v. State, supra, where the appellant testified and denied both the assault and an attempt to accomplish intercourse. Here, the defendant did not testify and there is no testimony raising an absence of force or intent.

In the charge that was submitted to the jury, the court, after properly defining the term "force," submitted the same "to-warrant-a-conviction" charge approved in Douthit v. State, supra, at page 158, except that, consistent with the indictment, a finding of "actual force" was required in lieu of the Douthit element of "threats," and a finding of "specific intent" was required in lieu of the Douthit requirement of "intent." The charge properly placed the burden of proof and required the jury to acquit if the burden were not met or if the jury had a reasonable doubt.

A comparison of the charge given with the instruction that appellant now contends should have been given shows that the material difference between the two is that, unlike the charge, the instruction would have advised the jury " . . . that the mere desire on the part of the defendant to satisfy sexual craving or any impulse that he may have had to have illicit carnal relations with the prosecutrix accompanied even by the laying on of hands does not constitute an assault with intent to rape. . . ." and then, as did the charge actually given, states the constituent elements of the crime.

■ Implicit in the disposition of the first ground of error is the determination that the evidence was sufficient to support the finding of the presence of the specific intent which, under the charge, could not have been found until the jury determined there was no absence of intent. Moreover, the appellant neither testified nor called any witnesses, except those produced by the State, in his behalf, and all the evidence showed that the assault to commit rape was accomplished by force. Considered in the light of all the facts, it was not error for the court to decline to submit the absence of force charge now relied on by appellant. Citizen v. State, 463 S.W.2d 188 (Tex.Cr.App.1971). Where the appellant does not testify and there is no testimony of only a mere desire or impulse by

him to satisfy his sexual cravings with the assaulted party, that defensive theory is not raised by the evidence, there is no error in refusing the instruction appellant claims should have been given. Brown v. State, 171 Tex.Cr.R. 167, 346 S.W.2d 842 (1961). The second ground is overruled.

Error is advanced in the third ground because the court failed to strike from the record and instruct the jury to disregard that part of the prosecutrix's unresponsive answer declaring that the appellant stated " . . . if he went back to the penitentiary he would die." The entire answer and proceeding with respect thereto have been recounted heretofore in full. The record demonstrates that no objection was made to the testimony at any time prior to appeal, that no request was made for the court to instruct the jury to disregard any part of the answer, and that appellant had the opportunity to object and to request an instruction; therefore, the complaint is not properly presented for review, and no error is shown. Pruitt v. State, 164 Tex.Cr.R. 340, 299 S.W.2d 148 (1957). The third ground is overruled.

The charge of the court contained no instruction on the failure of the appellant to testify, and this omission is made the subject matter of the fourth ground of error. After the preparation of the charge and its examination by counsel, there was recorded the following occurrence in the presence of appellant's trial counsel:

"MR. McCORMICK (One of the State's counsel): I would like for the record to reflect at the request of defense counsel, the instruction that the jury is not to consider failure of the defend-

ant to testify is any evidence of guilt. It is deleted at his request.

"THE COURT: It is at the defense's request that that statement is omitted from the charge."

Notwithstanding the record, it is contended that the omission is reversible error because the record does not show the defense counsel or appellant made the request for, or agreed to the omission of, the instruction. The record establishes the converse of the contention. However, assuming arguendo that the omission was not by specific request, the absence of an objection or the failure to offer a requested special charge not only failed to preserve but waived the error now claimed. Articles 36.14 and 36.15, Vernon's Ann.C. C.P.; Ballard v. State, 450 S.W.2d 83 (Tex.Cr.App.1969). Recognizing that the giving of the instruction may be waived, appellant further argues that the failure of the court to submit the instruction on its own volition deprived the appellant of a fair trial. Of course, the court may charge the jury on the failure of the defendant to testify, but the omission of the instruction is not prejudicial error. Smith v. State, 455 S.W.2d 748 (Tex.Cr.App. 1970). Indeed, as noted in Handley v. State, 480 S.W.2d 738 (Tex.Cr.App.1972), the trend today seems to be for the appellant to complain of the inclusion, rather than the omission, of the instruction in the charge. The fourth ground is overruled.

Appellant's pro se brief contains four grounds of error not previously considered. We have considered the same and find them to be without merit.

The judgment of conviction is affirmed.

Opinion approved by the Court.