Cecil Lewis PARISH, Appellant,

v.

The STATE of Texas, Appellee.

No. 49652.

Court of Criminal Appeals of Texas.

May 28, 1975.

Rehearing Denied June 25, 1975.

Harry Louis Zimmermann, Dallas, for appellant.

Henry Wade, Dist. Atty., Gary Love and Jay Ethington, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

The conviction is for burglary; the punishment, assessed by the jury, eight and one-half years' imprisonment.

Joyce Coleman returned home at approximately 7:15 P.M. and saw appellant standing on her front porch and a Chevrolet parked in her driveway. As she parked her car behind the Chevrolet, appellant ran. Mrs. Coleman found that the front door lock on her house had been broken, and a television set, rifle, shotgun, and two gun cases, all belonging to her and her husband, were found in the Chevrolet.

Appellant's first contention is that the evidence is insufficient to sustain a conviction for burglary of a private residence in the daytime, urging that the evidence shows the offense was committed at night.

"Daytime" is any time of the twenty-four hours from thirty minutes before sunrise until thirty minutes after sunset. Article 1396, Vernon's Ann.P.C. This Court can take judicial notice that the sunset on September 21, 1973, the day of the offense, was at 7:26 P.M. in Dallas. Pierce v. State, Tex.Cr.App., 401 S.W.2d 238. Hence, if the burglary occurred any time before 7:56 P.M., it happened in the daytime. Mrs. Coleman testified that she returned and discovered appellant between 7:00 and 7:30, and that "it was getting dark." There is no evidence indicating that the burglary occurred after 7:56 P.M. No error is shown. For this reason, appellant's second contention that the trial court erred in not submitting to the jury his requested issue as to whether the alleged burglary occurred in the daytime or nighttime is overruled.

Appellant's third contention is that the trial court erred in receiving the jury's verdict on punishment from a person other than the foreman of the jury.

The record reflects that the verdict at the penalty stage of the trial had a different name signed as foreman from the name signed as foreman on the verdict at the guilt stage. Appellant submits that the absence of the foreman's signature creates a presumption that the verdict was rendered by less than twelve jurors.

This identical question was disposed of adversely to appellant in Shelton v. State, Tex.Cr.App., 441 S.W.2d 536. Where the discrepancy is not brought to the attention of the trial judge and there is no request to poll the jury, no harm is shown.

Appellant's fourth contention is that improper argument was presented at the punishment stage. The arguments in question are as follows:

"[Defense Attorney]: . . . Mr. Ethington has characterized the Defendant as a seven time loser. He relies on this document there when he makes that argument. He has, in fact, been convicted of six prior offenses, but if you will look at that record, you will see that they were run concurrent; instead of going to the penitentiary for a long time, they were treated as one sentence, that being a sentence of three years, since that was the largest sentence that he received on any of these six convictions there portrayed. So, in fact, I think you

would have to characterize him here as a two time loser. When you talk about rehabilitation as punishment that he had received in the past; how many times had he been punished for breaking the law and why should he be punished at this time . . . . I think it boils down to—there are a lot of arguments that one can make about rehabilitation and about punishment and about deterrents in a case and how people are going to read the newspaper of what's happened here and not do these sort of things again, but it really boils down to what do you do to help this person that is on trial here to become a useful and working member of our society. . . . You can say, 'Well, put him in the penitentiary for as long as we can, we'll put him there for twelve years, as much as the law allows us to and we want him off of our streets for that long', . . . I'm not a psychologist or mind reader or a penologist, but you can try to pick a punishment that you think would teach this man or give him an opportunity or the Texas Department of Corrections an opportunity to rehabilitate him and work with him and put him back on the streets of Dallas again . . . . that here is a man that could be rehabilitated, he could learn and should learn to follow the norms of our society and certainly the Texas Department of Corrections is set up to do that. That is the purpose for having it. I will not have an opportunity to respond to Mr. Callan's arguments. He will close in the case. I would assume that he will join with Mr. Ethington in asking you to return a maximum sentence in this particular case. He will probably talk to you about law enforcement and about deterrents, . . . and to just put him away for twelve years and if you think that, that is the verdict you should return, . . . Or should you give the Department of Corrections a chance to rehabilitate and to work him again and they will. . . . You are taking

him out of society and keeping him in jail and placing him in a penal institution for a period of years. . . . It's easy to talk about three years or twelve years and it doesn't sound like much, but stop and think; what does three years mean? If a man's 25, he's going to be 28—

\* \* \* \* \* \*

"[Prosecutor]: Judge, we're going to object to any comments on how long a year is or on the time. I think the jury has been instructed not to consider for any purposes how long the Defendant will actually serve.

"THE COURT: . . . *you will not speculate, as directed in this charge, about how long he will serve,* . . . *that is up to the Board of Pardons and Paroles as set out in the charge. Anything said to the contrary, you just disregard it.*

"[Defense Attorney]: . . . You're taking time out of a man's life and putting him in the Texas Department of Corrections, in a penal institution and hoping that they, in their expertise, will be able to work with him and return him where he can work in your community. He's going to come back sooner or later. If you send him down there for twelve years, he's going to come back sooner or later. I suggest to you that he would be more likely to return as a valuable member of your community and of my community if you are reasonable in punishing him rather than he will be if you sentence him bitter him and sentence him for a maximum. . . .

\* \* \* \* \* \*

"[Prosecutor]: . . . I will submit to you there is only one place that you could look to any expertise on that and that is the Texas Department of Corrections and what I am asking you to do is to give them sufficient time to work with this man and if there is any hope of rehabilitation, I don't know whether

there is or not, there is no evidence to that issue except the fact that he has done it six times before and got out and did it again, . . . give them enough time. Mr. Finstrom is right, he'll be back some day, but give them enough time to do whatever they can do and that's twelve years. Now, twelve years; that's a twelve year sentence. You know that on six prior cases, he was sentenced. If you'll look on all of them, September 8th of 1972 and he received those sentences of two and three years for six offenses. You know from the evidence before you that on September 21st of 1973, one year and a few days later this man

"[Defense Attorney]: We object to the line of this argument as asking the jury to take into consideration that this man will be paroled in this case when they're setting punishment.

"THE COURT: Yes, you shouldn't. I just instructed you not to do that and any argument on it, I want you to disregard it and I told you and charged you that you would base your verdict on the evidence that you received from here and the law.

"[Defense Attorney]: We would move for a mistrial.

"THE COURT: Overruled."

The decision of this Court with which the argument appears to conflict is Hernandez v. State, 366 S.W.2d 575. It was there decided that an argument which "in effect told the jury that it did not matter how long a term was assessed" was improper. There, in his closing argument, the prosecutor said,

"Therefore, I say this, that I feel confident that when you send him, that when he has been rehabilitated that they will turn him loose."

In Marshburn v. State, 522 S.W.2d 900, (Tex.Cr.App.1975), we reversed upon the prosecutor's argument ". . . and you say five years and two years later they are out committing another offense." We found that this argument did not fall within any of the permissible areas of jury argument. Alejandro v. State, Tex.Cr.App., 493 S.W.2d 230. In Alejandro an answer to argument of opposing counsel was held to be one of the permissible areas.

The situation with which we are here faced is distinguishable from both Hernandez and Marshburn. See also Jones v. State, 522 S.W.2d 225 (Tex.Cr.App.1975).

■ Here, the subject of rehabilitation as is shown above was first broached by the appellant, cf. Graham v. State, Tex. Cr.App., 422 S.W.2d 922, urging that the purpose of the penal system was to provide for the re-entry into society of convicted criminals as productive citizens, and that a maximum sentence would only serve to embitter the appellant.

The State's argument was responsive to that of the appellant. He did not urge, as in Hernandez, that the appellant's rehabilitation would provide for his release regardless of the sentence imposed. The reference to appellant's prior sentence and his actions scarcely a year later, considered in the context of both arguments in their entirety, was but the prosecutor's assertion that another light sentence would not be sufficient to effect appellant's rehabilitation.

Similar arguments, asking for a lengthy sentence to ensure a successful rehabilitation, have been upheld in Pringle v. State, 511 S.W.2d 35, and Smith v. State, Tex. Cr.App., 457 S.W.2d 58, and held to be harmless in Cooper v. State, Tex.Cr.App., 500 S.W.2d 837.

In light of these decisions we feel that the prosecutor's argument is not such a di-

rect reference to the parole law as would call for reversal under Hernandez. Further, the jury was instructed to disregard the comment, rendering the error, if any, harmless.

 Appellant also complains of argument in his last ground of error. The argument complained of is as follows:

"[Prosecutor]: . . . Now, if Joyce Coleman, Mrs. Coleman, had come in the driveway and seen him in the house, in a house, excuse me, with the television set in his hand, well, then you've got eyeball testimony. No, she saw him standing on the front porch, you see. He had already put the television in the car, so she saw him there.

"[Defense Attorney]: Objection to the argument of this returning, that he already put the television in the car.

"THE COURT: I sustain it unless you connect it with the evidence.

"[Defense Attorney]: We would ask that the jury be instructed to disregard that.

"THE COURT: Disregard that, please.

"[Defense Attorney]: We move for a mistrial.

"THE COURT: I'll overrule you."

Appellant argues that these remarks were not supported by the evidence, either directly or as a reasonable deduction therefrom. The television was found in appellant's car parked in Mrs. Coleman's driveway. It is a reasonable deduction from the evidence that appellant placed it there. No error appears.

The judgment is affirmed.

Opinion approved by the Court.