Archie BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 59758.

Court of Criminal Appeals of Texas, En Banc.

June 10, 1981.

His punishment was assessed by a jury at 18 years' confinement in the Texas Department of Corrections, together with a $10,000 fine.[1]

This Court is confronted at the outset with a question of first impression:

> Is it reversible error for the trial court, over objection, to refuse to charge the jury, at the punishment stage of the trial, on the defendant's failure to testify, when the trial court so charged the jury at the guilt-innocence stage of the trial?

Appellant did not testify at either stage of his trial. The trial court instructed the jury at the guilt-innocence stage of the trial on appellant's failure to testify but refused, over timely objection, to charge in like fashion at the punishment stage. We reverse for reasons hereinafter stated.

The Supreme Court of the United States recently ruled in *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), that *the giving of an instruction* on the failure of the accused to testify, over objection, *at the guilt-innocence stage of a trial* did not violate any provision of the Constitution of the United States. It was pointed out, however: "Each State is, of course, free to forbid its trial judges from giving the instruction as a matter of state law," but it was held that the fifth and fourteenth amendments bar only adverse comment on a defendant's failure to testify, not a favorable limiting instruction.

Even more recently, in *Carter v. Kentucky*, —— U.S. ——, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), the Supreme Court held that *a defendant has a right to a requested instruction on failure to testify* under the privilege against compulsory self-incrimination of the fifth amendment, as made applicable to the states by the fourteenth amendment, *at the guilt-innocence stage of the trial.*

Though instructive and informative, the above decisions of the Supreme Court do not answer our question due to the fact

Robert A. Canonico, Waco, for appellant.

Felipe Reyna, Dist. Atty., and Rodney Goble, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Appellant appeals his conviction for the felony offense of burglary of a building.

---

1. A prior conviction was alleged for enhancement of punishment purposes, but the State waived same at trial. Thus, the maximum possible punishment for this offense was confinement for 20 years and a fine of $10,000. See Secs. 30.02(c) and 12.33, P.C.

that Texas is unique: under our system of criminal jurisprudence in felony and also in misdemeanor cases, where punishment may include assessment of jail time, and the plea is not guilty, we have a bifurcated trial system, i. e., if there is a jury trial and if the jury finds the accused guilty, and if, prior to the voir dire examination of the jury, the defendant has filed an election for the jury to assess punishment, then there may be a separate hearing before the same jury on the issue of punishment. See Art. 37.07, V.A.T.C.C.P., hereinafter cited as C.C.P. Here, appellant timely elected, as was his right under the law, to have the jury assess his punishment should he be found guilty.[2]

The importance of giving proper instructions to a jury by a trial court should never be questioned, especially when one considers the very obvious purpose the charge serves:

The very purpose of a jury charge is to flag the jurors' attention to concepts that must not be misunderstood ... *Lakeside*, supra, at 435 U.S. 340, 98 S.Ct. 1095.

In resolving the question before us, we first acknowledge that both Constitutions under which we live provide that an accused in a criminal prosecution shall not be compelled to give evidence against himself.

The Fifth Amendment, United States Constitution, provides that an accused in a criminal prosecution shall not be compelled to give evidence against himself. Such amendment has now become applicable to the states. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678; *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106.

The Texas Constitution, Article I, Sec. 10, contains a similar provision. See also Article 1.05, V.A.C.C.P. *Brumfield v. State*, [Tex.Cr.App.] 445 S.W.2d 732, 734 (1969).

■ These Constitutional provisions are as broad as the mischief against which they seek to guard. The proposition that a criminal defendant cannot be compelled to take the witness stand at the guilt-innocence stage and give evidence against himself is so well understood that it requires no citation of authority to support it. It is, of course, a waivable right if done knowingly, voluntarily and intelligently. A corollary to the above is the fact that any defendant in a criminal action shall be permitted to testify in his own behalf. But, again, the failure of an accused to testify at his trial, at the guilt-innocence stage, shall not be taken as a circumstance against him, nor shall it be alluded to or commented on by counsel in the cause. See Art. 38.08, C.C.P.

■ We observe that, as *at the guilt-innocence stage of the trial*, if the defendant exercises his right to testify *at the punishment hearing*, he is subject to the same rules governing examination and cross-examination as any other witness. He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying, except where there are overriding constitutional or statutory prohibitions. See *Brumfield*, supra, see also *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) and *Santiago v. State*, Tex.Cr.App., 444 S.W.2d 758 (1969).

■ However, it is further observed that if the defendant chooses to testify *at the punishment stage of the trial*, but not at the guilt-innocence stage, *Walker v. State*, Tex.Cr.App., 555 S.W.2d 454 (1977); and *Stratman v. State*, Tex.Cr.App., 436 S.W.2d 144 (1969), he may waive, for appellate purposes, evidentiary objections made during the guilt-innocence stage of the trial. This may include the right to complain on appeal of an in or out-of-court identification, the sufficiency of the evidence, and an illegal search and seizure. See *Downey v. State*, Tex.Cr.App., 505 S.W.2d 907 (1974); *Sims v. State*, Tex.Cr.App., 502 S.W.2d 730 (1973);

---

**2.** See *Cleaveland v. State*, Tex.Cr.App., 507 S.W.2d 769 (1974).

*Palmer v. State*, Tex.Cr.App., 475 S.W.2d 797 (1972); *Boothe v. State*, Tex.Cr.App., 474 S.W.2d 219 (1972); and *Richardson v. State*, Tex.Cr.App., 458 S.W.2d 665 (1970).

■ We therefore move to *the punishment phase of the trial* where the defendant is not entitled, because he was found guilty, to many of the precautionary instructions usually given at the guilt-innocence phase of the trial, i. e., he is no longer presumed innocent, by the verdict of the jury the State has satisfied its burden to prove the defendant guilty, there is no longer a reasonable doubt as to the defendant's guilt, and the indictment or information is no longer relevant except where it contains enhancement allegations. See Art. 36.01, C.C.P.

■ However, the right of self-incrimination does not end with the jury finding the defendant guilty for, as Presiding Judge Onion said in *Brumfield*, supra:

The mere finding of guilt does not terminate the privilege against self-incrimination. . . . the privilege ceases only when liability to punishment no longer exists. We cannot agree that the legisla-

ture by providing a bifurcated trial system intended to make the decision of an accused as to taking the witness stand on the issue of guilt a more onerous one than it was under the former Code. (emphasis added) *Id.* at 741.

■ Nor does the fact that a verdict of guilty has been returned by a jury diminish the importance of giving additional proper instructions to the same jury at the punishment stage of the trial. In fact, the legislature has mandated, see Art. 37.07, Sec. 2(b), C.C.P., that "the court shall give such additional written instructions as may be necessary" at the punishment stage of the trial.[3]

The dissent's argument that the trial court's instruction, given at the guilt-innocence stage of the trial, carried over to the punishment phase of the trial, thus eliminating the need for an identical instruction at that stage of the trial, at first blush seems reasonable, but a short analysis of the proposition shows it to be fallacious. The trial court, by giving the jury pattern jury instructions at the punishment stage, which were in part identical to those given at the guilt-innocence stage, showed a recognition of the evanescent qualities of the human

**3.** Ordinarily, and as a matter of course, trial courts will give what is denominated among the bench and bar "pattern jury instructions" *at the guilt-innocence phase of the trial, as well as at the punishment phase.* These "pattern jury instructions" are usually contained in the concluding portion of the court's final charge, and are taken verbatim from statutes or the trial court will paraphrase the applicable statute. See for example:

Art. 21.01, C.C.P., "Indictment is no evidence of the guilt of the defendant";
Art. 36.13, C.C.P., "Jury is judge of facts but bound to receive the law from the court and be governed thereby";
Art. 36.18, C.C.P., "Jury may take charge to its deliberating room";
Art. 36.22, C.C.P., "Outsiders are prohibited from conversing with jury";
Art. 36.25, C.C.P., "Jury may receive exhibits while deliberating";
Art. 36.27, C.C.P., "Jury may communicate with court";
Art. 38.03, C.C.P., "Accused is presumed innocent";
Art. 38.04, C.C.P., "Jury are the judges of facts of the case";
Art. 38.08, C.C.P., "Defendant may testify at his trial";

Art. 40.03(3), C.C.P., "Verdict of the jury will not be decided by lot or chance".
The trial court, *in the charge given at the punishment phase of the trial,* instructed the jury on the range of punishment; the fact the jury was not to concern itself with how long the appellant would be required to serve the sentence the jury assessed; that the time required to serve the sentence came within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor and was of no concern to the jurors; that the jury was not to decide the punishment to be assessed by lot or chance; that the foreperson was to sign the verdict; *that the jury was the exclusive judge of the facts proved;* that the jury would have the charge with them when they deliberated; and, lastly, if requested, exhibits in evidence would be given to the jury while it deliberated. The trial court in the punishment charge actually gave not only identical but different "pattern instructions" to the jury that dealt exclusively with punishment. However, some of these were as applicable to one stage of the trial as the other. See also Paul McClung's *Jury Charges for Texas Criminal Practice,* 1979 Edition, pp. 5–6, 259.

mind. Otherwise, if the elementary pattern instructions given at the guilt-innocence stage of the trial were so permanently embedded in the minds of the jurors, common sense dictates there would have been no need to give the jury those instructions again. It would also be disingenuous to say that a jury composed of 12 reasonably intelligent persons were sufficiently attentive during the guilt-innocence stage of the trial to be capable of carrying over to the punishment phase the instruction on the failure of the defendant to testify, but were incapable of doing the same with the most rudimentary of the pattern jury instructions given.[4]

The above holding is really not anything new as what we announce today is merely to apply to the punishment stage of the trial, inversely, the many suggestions we have made in the past, see *Rogers v. State*, Tex.Cr.App., 486 S.W.2d 786 (1972); *Handley v. State*, Tex.Cr.App., 480 S.W.2d 738 (1972); and *Hill v. State*, Tex.Cr.App., 466 S.W.2d 791 (1971), regarding the guilt-innocence stage of the trial.

 We now return to the question presented, and answer it in the affirmative. We hold that where a request is made to the trial court to add to its charge at the punishment stage of the trial an instruction on the failure of the defendant to testify, or an objection is made to the omission of such charge, it is reversible error if the trial court fails to honor that request or objection because we find that "members of the jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence," at the punishment phase of the trial, just as they could from the defendant's silence at the guilt-innocence stage of the trial. "No judge can prevent jurors

from speculating about why a defendant stands mute . . ., but a judge can, and must, *if requested to do so*, use the unique jury instruction to reduce that speculation to a minimum." See *Carter*, supra, —— U.S. at pages ——, ——, 101 S.Ct. at 1113.

For the above and foregoing reasons, the judgment is therefore reversed and the cause is remanded for a new trial.

ROBERTS, ODOM and DALLY, JJ., concur.

W. C. DAVIS, Judge, dissenting.

The majority places reliance upon *Carter v. Kentucky*, —— U.S. ——, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). I, too, find that the *Carter* decision is both informative and self-limiting. In that case, the Supreme Court of the United States expressly stated:

"... While it is arguable that a refusal to give an instruction similar to the one that was requested here can never be harmless, cf. *Bruno [v. United States]*, 308 U.S., [287] at 293, [60 S.Ct. 198 at 200, 84 L.Ed. 451], we decline to reach the issue, because it was *not* presented to or considered by the Supreme Court of Kentucky. See *Sandstrom v. Montana*, 442 U.S. 510, 527 [99 S.Ct. 2450, 2461, 61 L.Ed.2d 39]." (Emphasis added) *Carter*, supra, at 101 S.Ct. page 1121.

Although this Court has previously held that the giving of the admonitory instruction *at the guilt-innocence stage* was within the sound discretion of the trial court,[1] *Carter* now directs otherwise. However, as stated, *Carter* still leaves open the issue whether, under the proper circumstances, the failure to give the requested instruction would be harmless error.[2]

---

4. A good example in this regard is the omission in the guilt-innocence charge of an instruction regarding the election of the foreperson—with the jury nevertheless being instructed to elect a foreperson at the punishment stage of the trial, even though a foreperson had been selected at the guilt-innocence stage. See, however, *Parish v. State*, Tex.Cr.App., 523 S.W.2d 665 (1975); and *Shelton v. State*, Tex.Cr.App., 441 S.W.2d 536 (1969), setting out the fact there

may be two forepersons—if there be no objection, for each stage of the trial.

1. See *Williams v. State*, 511 S.W.2d 64 (Tex.Cr. App.1974), but compare *Handley v. State*, 480 S.W.2d 738 (Tex.Cr.App.1972), *Jaffrion v. State*, 501 S.W.2d 322 (Tex.Cr.App.1973), and *Anderson v. State*, 504 S.W.2d 507 (Tex.Cr. App.1974).

2. A re-examination of the harmless error doctrine, as applied to the Fifth Amendment and

If there ever was a case representing no error or, at the most, harmless constitutional error, it is before us today. I am, of course, referring to the great weight of the evidence establishing guilt, the bifurcated trial with the instruction previously given during the guilt-innocence phase, and the balancing factors involved in a repeated instruction.

## I.

The record before us is more than sufficient to establish appellant's guilt. On Tuesday morning, October 4, 1977, Roosevelt Young and his companions heard noises coming from Johnson's Lounge in Waco. Young observed appellant walking around in the alley adjoining the lounge and enter the lounge. One of Young's companions called the police. Appellant left the scene before the police arrived.

Waco police officers John Taylor and R. D. McCollum arrived approximately thirty minutes later and investigated. The officers discovered the building had been forcibly entered and ransacked. A few items were gathered near the rear door in an ice chest. One of the most significant items was found near the point of the forced entry against the outside rear wall. It was a receipt signed by appellant, dated October 3, 1977, for payment of a misdemeanor fine and court costs. This receipt strongly implied appellant's presence at the scene of the offense.

Meanwhile, Young accompanied a private security guard, "Big" Smith, on a patrol of the surrounding neighborhoods. Young and Smith pulled into a local convenience store where appellant was being questioned by other officers. Young immediately identified appellant as the person he saw at Johnson's Lounge.

At trial, Rufus Johnson testified that he was the owner of Johnson's Lounge. He stated that the lounge was closed on the morning of October 4, 1977. Johnson also stated that he did not know appellant or give appellant permission to enter the building. Finally, Johnson identified a knife taken from the Lounge. Appellant's girlfriend testified appellant had given her the knife.

I cannot believe that upon retrial and the giving of the admonitory instruction the jury's verdict would be different. The evidence of appellant's guilt is more than adequate. The prophylactic admonition to not consider appellant's silence, in this punishment stage, cannot be of sufficient magnitude to require reversal.

## II.

Furthermore, the instruction in issue was *previously* submitted to the jury in the charge at the guilt-innocence stage. The trial court read that instruction to the jury. The jury was thus admonished that "you cannot and must not refer or allude to that fact (defendant's election not to testify) throughout your deliberations or take it into consideration for *any* purpose whatsoever as a circumstance against the defendant." (Emphasis added).

This is clearly distinguishable from *Carter*, where a *complete* omission of the requested charge constituted reversible error. Appellant's rights, as guaranteed under *Carter*, were protected. The need for a *repeated* instruction during the punishment stage is illusory. Indeed, the issue of guilt had been determined. Since *Carter* seeks to protect the right against self-incrimination, the repetition is questionable when the issue is solely for punishment.[3] See, *Williams v. State*, 607 S.W.2d 577 (Tex.Cr.App. 1980). I would find no error in the failure to give the same issue *back-to-back* in a bifurcated trial.

the "failure to testify," under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966), leads to the inevitable conclusion that this is the type of case for which the harmless constitutional error doctrine was created.

3. See, *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), where the court was allowed to use a defendant's silence and non-cooperation as factors in assessment of punishment.

## III.

Finally, the issue of giving the instruction in the past has exposed a unique situation. Attorneys have repeatedly argued that the *inclusion* of the instruction of appellant's failure to testify constituted reversible error. See, e. g., *Smith v. State*, 455 S.W.2d 748 (Tex.Cr.App.1970) (constituted impermissible comment on the weight of evidence and infringement of privilege against self-incrimination); *Hill v. State*, 466 S.W.2d 791 (Tex.Cr.App.1971) (comment on exercise of constitutional right to remain silent); *Small v. State*, 132 Tex.Cr.R. 279, 104 S.W.2d 52 (Tex.Cr.App.1937) (insinuates culpable omission on part of defendant or conveys impression that he should have testified). Also, see, *Rogers v. State*, 486 S.W.2d 786 (Tex.Cr.App.1972).

The conflict in views was most aptly stated in *State v. Smart*, 485 S.W.2d 90, 95 (Mo.1972):

"We must recognize, however, that the instruction is a comment on defendant's failure to testify even though it is supposedly for defendant's benefit and is designed to keep the jury from speculating on the reasons for his failure to take the stand and drawing improper inferences therefrom. There are those who believe the instruction is more harmful than helpful and regardless of how favorably to the accused the instruction may be worded it may inadvertently cause the jurors to consider certain adverse inferences which would not otherwise have entered their minds."

Indeed, many states have found similar reasoning persuasive and have held that a trial court may not give such an instruction over the defendant's objection. *State v. Kimball*, 176 N.W.2d 864 (Iowa, 1970); *Villines v. State*, 492 P.2d 343 (Okl.Cr.1971); *Mosby v. State*, 246 Ark. 963, 440 S.W.2d 230 (1969); *State v. White*, 285 A.2d 832 (Me.1972); *Dooley v. State*, 393 N.E.2d 154 (Ind.1979); *People v. Lee*, 44 Ill.App.3d 43, 2 Ill.Dec. 668, 357 N.E.2d 888 (1976); *People v. Yopp*, 67 A.D.2d 774, 412 N.Y.S.2d 698 (1979). This Court has refused to take such a rigid stand and holds that such an instruc-

tion, even in the face of an objection, is proper. *Small v. State*, supra; *Smith v. State*, supra. However, we have admonished the trial courts to not give the instruction if the defendant objects to its inclusion. *Hill v. State*, supra; *Rogers v. State*, supra.

Recently, the United States Supreme Court in *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), held that the giving, over the defendant's objection, of the cautionary instruction that the jury is not to draw any adverse inferences from a defendant's decision not to testify in his behalf does not violate the privilege against compulsory self-incrimination. Accord, *Smith v. State*, supra; *Hill v. State*, supra; *Rogers v. State*, supra. The import to be drawn from *Lakeside* is that the Supreme Court recognized the diverse views found not only in the state courts but in the Federal system as well. See *Lakeside v. Oregon*, supra, 435 U.S. at 336, n. 3, 98 S.Ct. at 1093, n. 3.

In applying these decisions to the facts in this case, the trial judge is confronted with anything but a consistent line of legal theory. It must, in an effort to assure appellant a fair trial, weigh the "pros and cons" of including the *second* charge.

Here, the cautionary charge had already been presented and read to the jury during the guilt-innocence stage. The trial judge, under the circumstances, may very well feel that another instruction calls undue and unfavorable attention upon appellant's failure to testify. Moreover, because of the admonishments found in *Hill* and *Rogers*, the court may feel that it had upheld its statutory duty in giving the initial instruction, thereby striking a reasonable balance between conflicting interests.

I, therefore, would hold that the trial court has the discretionary right in refusing to give the admonitory "failure to testify" instruction during the punishment stage. This case is distinguishable from the situation where a *complete* omission of requested instruction is reversible error. However, even assuming that the court did err in refusing to give the instruction over appel-

lant's objection, the error was not so prejudicial to require reversal. *Carter v. Kentucky*, supra; *Chapman v. California*, supra. Appellant had already received the instruction during the guilt-innocence phase.

I dissent to the majority's opinion.

W. C. DAVIS, J., joins in dissent.