NO. 07-09-0157-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

MARCH 24, 2011

 

______________________________

 

 

CODY RAMIREZ, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 140TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2009-422,891; HONORABLE JIM BOB DARNELL, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

OPINION

            Following a plea of not
guilty, Appellant, Cody Ramirez, was convicted by a jury of aggravated assault
of a public servant,[1]
with an affirmative finding on use of a deadly weapon.[2]  Punishment was assessed by the jury at
confinement for life.  Presenting two
issues, Appellant questions whether (1) the trial court constructively denied
his right to testify in violation of due process by indicating an intent to
allow improper impeachment evidence and (2) the trial court erred in not
submitting a jury charge that properly instructed it regarding the affirmative defense
of duress.[3]  We affirm.

Background Facts

            At approximately 4:00
a.m. on December 5, 2006, Officers Michael Chavez and Michael Matsik, in separate patrol cars, responded to an aggravated
robbery at a local gaming establishment.  Per procedure, they retrieved their patrol
rifles from the trunks of their respective patrol cars.  While Officer Chavez was loading his rifle, two
suspects wearing black ski masks and hooded sweatshirts exited the back door of
the gaming establishment and began running for the east gate.  Although ordered to the ground, the two
suspects began to flee in opposite directions. 
Officer Chavez gave chase to the suspect running south, while Officer
Matsik gave chase to the other suspect. 
At the time, both officers observed a small gray or silver car parked in
the alley.  

            Officer Matsik
temporarily lost sight of his suspect when the suspect cut through a
fence.  A female bystander pointed
Officer Matsik in the suspect's direction. 
Although the area was dark, Officer Matsik observed a silhouette
followed by a muzzle flash.[4]  He immediately dropped to the ground as
multiple shots were fired.  He picked
himself up to return fire but noticed the safety on his rifle was still engaged.  The suspect had retreated over a gate into a
residential area, and Officer Matsik could not get a clear shot. 

            After Officer Chavez
heard shots fired, he decided to check on his fellow officer.  As he approached, he saw the silver car which
he had earlier observed in the alley speed away.  Other officers on the scene pursued the car
and eventually arrested Appellant.   The second suspect, the suspect Officer Chavez
had originally pursued, was later found hiding under a door that was leaning up
against a building.  

            After the suspects were
arrested, Officer Matsik experienced a burning sensation on his upper
thigh.  He pulled his left pant leg up
and, using the lights of the patrol car, noticed a bullet hole
in the lower part of the pant leg toward his ankle.  He also had graze wounds on his upper thigh
and just above his left wrist.  He
concluded that bullets were fired in his direction and that contact was made on
at least three occasions. 

            Although Appellant was
initially charged in a six-count indictment, the State announced just before
trial that it was proceeding only on count VI, the charge of aggravated assault
with a deadly weapon against Officer Matsik. 
After a jury trial, Appellant was convicted and sentenced to life
imprisonment.

I.          Issue One--Did the trial court constructively deny Appellant his
right to           testify by announcing
that it would permit the State to cross-examine him            with improper impeachment evidence?

            Appellant proceeded to trial on the
theory of duress as an affirmative defense. The theory was that Appellant's
uncle, Richard Ramirez,[5]
coerced him into committing the aggravated robbery and threatened to kill him
if he got caught.  Ramirez testified that
he "masterminded" the robbery at the gaming establishment, provided
Appellant with a gun, and threatened his life. 
He further testified that his instructions to Appellant included not
getting caught or he would have to "deal with" him.  His advice to Appellant to evade officers was
to "shoot low" and "[g]et away."  Richard Ramirez was inside the gaming
establishment at the time of the robbery but was not armed at the time and was
not near Appellant.  

            Following Ramirez's
testimony, defense counsel advised the trial court that Appellant indicated he
wanted to testify and asked that he be properly admonished.  Defense counsel's understanding at that time
was that Appellant would only be impeached with prior felonies or misdemeanors
involving moral turpitude.  The
prosecutor responded that with the affirmative defense of duress, Appellant
would have to accept full responsibility for the crime and that his character
and relationship with Richard Ramirez would be explored.

            The jury was excused and
Appellant took the stand and was admonished by the trial court about the waiver
of his right against self-incrimination. 
After a brief question and answer period, the trial court found that
Appellant had freely and voluntarily waived that right.  The court then requested that the prosecutor
reveal her intended line of questioning.

            The prosecutor advised
the court that based on the affirmative defense of duress, she intended to
explore Appellant's relationship with his uncle which would put Appellant's
character at issue.  She also expressed
her intent to question Appellant on his problems with the juvenile system and
possible gang activity. 

            The trial court ruled
that the prosecutor could ask questions on the proposed areas, except for any
questions relating to gang activity. 
Defense counsel sought clarification and the trial court explained that its
ruling would permit questions on Appellant's juvenile record and extraneous offenses
without limiting those extraneous offenses to prior acts involving moral
turpitude.  

            Defense counsel then
asked to confer with Appellant after which he raised the following objection:

Your Honor, in light of the Court's ruling, allowing
the prosecution to go into juvenile records and extraneous offenses, I have
spoken with my client, [Appellant], and he now informs me that he does not wish
to testify at this point during the guilt - innocence stage.  

I wish to state for the record that I am objecting to
the Court's ruling, and I would submit that the ruling itself prohibits him
from taking the stand under the present circumstances.

Defense
counsel's objection was overruled.

            By his first issue, Appellant argues
that the trial court's ruling constructively denied him the right to testify in
his own defense.  While acknowledging
that Rule 404(b) of the Texas Rules of Evidence allows the admission of other
crimes, wrongs or acts for certain limited purposes, Appellant maintains the
State did not offer a legitimate limited purpose for the scope of its intended
cross-examination.  He further maintains
the trial court's ruling would have allowed impermissible impeachment evidence
regarding Appellant's character.  The
court's action, he asserts, presented him with a Hobson's choice.

            An accused has the right
to testify on his own behalf.  See Rock v. Arkansas, 483 U.S. 44, 49,
107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).  See also
Tex. Const. art. I, section 10; Tex. Code Crim. Proc. Ann.
art. 38.08 (West 2005).  If, however, an accused exercises his right
to testify, he is subject to the same rules governing examination and
cross-examination as other witnesses.  Brown v. State, 617
S.W.2d 234, 236 (Tex.Crim.App. 1981). 
"He may be contradicted, impeached, discredited, attacked,
sustained, bolstered up, made to give evidence against himself, cross-examined
as to new matter, and treated in every respect as any other witness testifying,
except where there are overriding constitutional or statutory
prohibitions."  (Citations omitted).
 Id.

            The decision of an
accused whether to testify "seldom turns on the resolution of one factor among
many."  New Jersey v. Portash, 440 U.S. 450, 467, 99 S.Ct. 1292, 59 L.Ed.2d
501 (1979) (Blackmun, J., dissenting). 
When a defendant chooses not to testify, a reviewing court has no way of
knowing whether the State actually would have sought to impeach him with inadmissible
evidence of extraneous offenses or prior convictions.  Luce v.
United States, 469 U.S. 38, 42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).  In Luce,
the Supreme Court adopted the rule that "[t]he preferred method for
raising claims such as [Appellant's] would be for the defendant to take the
stand and appeal a subsequent conviction . . . .  Only in this way may the claim be presented
to a reviewing court in a concrete factual context."  Id. at
43 (citing Portash,
440 U.S. at 462 (Powell, J., concurring)). 
The Supreme Court held that because Luce did not testify, he failed to
preserve his claim of improper impeachment evidence.   Luce,
469 U.S. at 43.

            In Jackson v. State, 992 S.W.2d 469, 479-80 (Tex.Crim.App. 1999), the
Court rejected an argument similar to the one being made here, i.e., that the
trial court effectively denied the defendant his right to testify by refusing
to limit the State's cross-examination.  In Jackson,
the defendant wanted to testify during the punishment phase of his capital
murder case, for the limited purpose of raising mitigation issues.  He sought to foreclose cross-examination
about extraneous offenses.  Jackson, 992 S.W.2d at 479.  Because the defendant failed to testify the
Court found the reasoning of Luce to
be applicable and held that he failed to preserve error for review.  Id. at 480.

            In the present case,
after conferring with his counsel, Appellant chose not to testify.  Without his testimony, this Court cannot
speculate on whether the prosecutor would have cross-examined Appellant on
matters outside the scope of permissible impeachment.  Notwithstanding that the prosecutor had
announced certain areas which she intended to explore on cross-examination,
without Appellant's testimony, this Court is at a disadvantage in attempting to
determine (1) the precise nature of the State's questions, (2) Appellant's
actual evidentiary objection, (3) whether the trial court's ruling would have
remained the same or would have changed as the case unfolded, (4) Appellant's
responses to the State's questions, and (5) whether any resulting error in
permitting impermissible evidence would have been harmless.  See
Luce, 469 U.S. at 41.  We conclude
that, just as in Luce and Jackson, Appellant's objection regarding
the trial court's "prospective ruling" regarding possible impeachment
evidence preserved nothing for review. 
Issue one is overruled.

II.         Issue Two--  Did the trial court err in failing to submit a
jury charge that           properly instructed
the jury regarding the affirmative defense of duress?

Duress is an affirmative defense if the actor engaged in
proscribed conduct because he was compelled to do so by threat of imminent
death or serious bodily injury to himself or another.  Tex. Penal Code Ann. § 8.05(a) (West 2003).  A person is compelled to act within the
meaning of the duress defense only if confronted by force or threat of force
that would render a person of reasonable firmness incapable of resisting the
pressure.  Id. at (c).  Whether a
"person of reasonable firmness" would be incapable of resisting the
pressure to engage in proscribed conduct is an objective inquiry rather than a
subjective one.  See Wood v. State, 18 S.W.3d 642, 651 n.8 (Tex.Crim.App. 2000).

Appellant does not complain about the abstract or application
portions of the court's charge as they pertain to the affirmative defense of
duress.  Rather, he specifically
maintains that the following paragraph improperly instructed the jury that a
special finding was required for or against the affirmative defense of duress:

If, however, after viewing the facts from the
defendant's standpoint, you do not find by a preponderance of evidence that
defendant's participation in the offense, if any, was compelled by such threat
of force by Richard Ramirez as would render a person of reasonable firmness
incapable of resisting the pressure thereof, then you will find against the
defendant on his defense of duress.

During the charge conference, defense counsel objected to inclusion of
the above-quoted paragraph.  Counsel's
objection was overruled.  

Appellant argues the charge is a misstatement of the law
because it improperly instructs the jury to find "against the
defendant" if it does not find the affirmative defense of duress by a
preponderance of the evidence.  We
disagree.

First, the objected to portion of the court's charge does not
instruct the jury to find against the defendant on the issue of guilt or
innocence if it does not find the affirmative defense of duress by a
preponderance of the evidence.  Instead,
in such a circumstance, it only instructs the jury to find against the
defendant on the affirmative defense issue of duress.  Therefore, Appellant's argument lacks
substantive merit.  

Secondly, assuming arguendo,
that the trial court's inclusion of the objected-to paragraph was error,
Appellant was not harmed.[6]  The function of the jury charge is to
instruct the jury on the law applicable to the case.  Tex. Code Crim. Proc. Ann.
art. 36.14 (West 2007); Dinkins v.
State, 894 S.W.2d 330, 339 (Tex.Crim.App. 1995), cert. denied, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).  The charge consists of an abstract statement
of the law and the application paragraph(s). 
See Plata v.
State, 926 S.W.2d 300, 302 (Tex.Crim.App. 1996), overruled on other grounds, Malik
v. State, 953 SW.2d 234, 239 (Tex. 1997).  When reviewing the charge for alleged error,
we examine the charge as a whole, considering the relationship between the
abstract and application portions of the charge.  King v. State, 189 S.W.3d 347, 364 (Tex.App.--Fort Worth 2006, no
pet.).

To avail oneself of the affirmative defense of duress, the
accused must admit to having engaged in the proscribed conduct.  See Giesberg v. State, 984 S.W.2d 245 (Tex.Crim.App. 1998),
cert. denied, 525 U.S. 1147, 119
S.Ct. 1044, 143 L.Ed.2d 51 (1999); Timms v. State,
2009 Tex.App. LEXIS 10042, at *3 (Tex.App.--Amarillo April 22, 2009, pet.
ref'd).  Forcing the State to carry its
burden of proof is not an admission of the charged offense.  Id. at *5.  Having
failed to admit to the offense, Appellant was not harmed by any alleged error
in the manner in which the defensive issue of duress was presented to the jury.


Furthermore, in order to meet the requirements of duress, the
threat of death or serious bodily injury must be imminent.[7]  (Emphasis added).  An imminent threat has two components of
immediacy.  Anguish v. State, 991 S.W.2d 883, 886
(Tex.App.--Houston [1st Dist] 1999, pet. ref'd).  First, the person making the threat must
intend and be prepared to carry out the threat immediately.  Second, carrying out the threat must be
predicated upon the threatened person's failure to commit the charged offense
immediately.  Id.  The Texas Court of
Criminal Appeals has determined that a threat of death at some indefinite time
in the future is insufficient to satisfy the requirement of imminence.  Blount v. State, 542 S.W.2d 164, 166 (Tex.Crim.App. 1976).

Part of the State's theory in opposition to the defense of
duress was that Appellant was not acting under duress because he was not in
imminent danger at the time of the aggravated robbery.  The testimony elicited from Ramirez was that
if Appellant was apprehended, he would "deal with" him when he tried
to get him out of jail.  He explained
that he would carry out his threat at some time in the future.  When asked again, "you would have dealt
with [Appellant] at some point in the future," Ramirez replied, "[o]f
course."  Ramirez also answered
"no" when asked if he was within "killing range" of
Appellant at the time of the robbery. 
Because Ramirez's threat to Appellant was a future threat, there was no
threat of imminent death or serious bodily injury.  

Based upon the record before us, we conclude that the trial
court did not commit reversible error by failing to submit a jury charge that
properly instructed the jury regarding the affirmative defense of duress.   Issue
two is overruled.

Reformation of Judgment

            In reviewing the record,
it has come to this Court's attention that the trial court's judgment contained
in the clerk's record includes clerical errors. 
The summary portion of the judgment reflects that Appellant entered a
plea of guilty to the charged offense while the reporter's record reveals that
Appellant in fact entered a plea of not guilty after the indictment was read.  Additionally, the "Statute for
Offense" reflects that Appellant was convicted under "§ 22.02(b)(2)."  However,
aggravated assault of a public servant is found at section 22.02(b)(2)(B) of the Texas Penal Code.

            This Court has the power
to modify the judgment of the court below to make the record speak the truth
when we have the necessary information to do so.  Tex. R. App. P. 43.2(b).  Bigley v. State, 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993).  Appellate courts have the power to reform
whatever the trial court could have corrected by a judgment nunc pro tunc where the evidence necessary to
correct the judgment appears in the record. 
Ashberry v. State, 813 S.W.2d
526, 529 (Tex.App.--Dallas 1991, pet. ref'd).  The power to reform a judgment is "not
dependent upon the request of any party, nor does it turn
on the question of whether a party has or has not objected in the trial court."  Id. at 529-30.

            The record clearly shows
that Appellant entered a plea of not guilty to the indictment and that he was
convicted pursuant to section 22.02(b)(2)(B) of the
Texas Penal Code.  Thus, we modify the
trial court's judgment to reflect a plea of "not guilty" and also
modify the "Statute for Offense" to reflect "§ 22.02(b)(2)(B)" in the summary portion of the judgment.  As modified, the trial court's judgment is affirmed.

 

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 

Publish.











[1]Tex.
Penal Code Ann. § 22.02(b)(2)(B) (West Supp. 2010).

 





[2]At
the time of the offense, Appellant was sixteen years old.  The trial court did take judicial notice of
the juvenile certification in the underlying case.  

 





[3]See Tex. Penal Code Ann. § 8.05 (West 2003).


 





[4]Officer
Matsik testified that a muzzle flash is a flash that comes from the barrel of a
weapon upon firing.





[5]Richard
Ramirez's charges in the aggravated robbery were dismissed in exchange for his
plea to capital murder for which he is serving a life sentence without the
possibility of parole.





[6]The
degree of harm necessary under Almanza v.
State, 686 S.W.2d 157, 171 (Tex. 1984), is some harm because the paragraph complained of was objected to and
the trial court overruled the objection.

 





[7]Appellant
did not testify.  This Court has found
that one asserting the affirmative defense of duress must admit to having
engaged in the proscribed conduct.  See Timms v. State,
2009 Tex.App. LEXIS 10042, at *3 (Tex.App.--Amarillo April 22, 2009, pet.
ref'd).  Forcing the State to carry its
burden of proof is not an admission of the charged offense.  Id. at *5.