ELI JOHNSON v. THE STATE.

No. 4903.  Decided May 8, 1918.

1.—Murder—Appeal Bond—Approval by Judge.

In the absence of the approval of the appeal bond, by the trial judge, the same is insufficient, and the appeal must be dismissed. However, this matter having been rectified, the appeal is reinstated and the case tried on its merits.

2.—Same—Murder—Corpus Delicti—Sufficiency of the Evidence.

Where the appellant contended, upon an appeal from a conviction of murder, that the evidence was insufficient to establish a corpus delicti, but the record showed that such evidence is sufficient upon that question, there is no reversible error. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Sabine. Tried below before the Hon. W. T. Davis.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

*Minton & Lewis,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of approval of appeal bond: Wells v. Texas, 68 Texas Crim. Rep., 277, 150 S. W. Rep., 1163, and other cases.

DAVIDSON, PRESIDING JUDGE.—The Assistant Attorney General makes a motion to dismiss this appeal for want of a sufficient appeal bond. There is an appeal bond in the record, but it is only approved

by the sheriff. · The statute requires that the trial judge shall also approve it. For this reason the appeal will not be entertained. The questions raised by the record and insisted upon for reversal will not be discussed on account of the dismissel.

The appeal is dismissed.

*Dismissed.*

ON REHEARING.

May 8, 1918.

DAVIDSON, PRESIDING JUDGE.—On a former day of the term the appeal in this case was dismissed for reasons stated in that opinion. This matter has been rectified and the case will be reinstated.

The record contains really but one question. That is, want of sufficient evidence to establish a corpus delicti. The majority of this court have reached the conclusion that the evidence is sufficient upon that question. We now state the strength of the State's case revolving around the question of corpus delicti. The State's witness Washington when asked where the alleged deceased, Joe Murray, was, answered: "He is dead, so they say." This extract is taken from the testimony of Crowell: "Do you know whether the boy died or not? A. Yes, sir." The testimony shows that appellant shot deceased, the shot taking effect just above the top of the hip. The evidence shows also that appellant shot at deceased and he fell. Washington also testified that he was working in Mr. Yarborough's camp at the time Joe Murray was killed. "I do not remember the exact date that Joe Murray was killed." Crowell also testified: "I was in the camp when Joe Murray was killed. I saw the transaction there when he was killed. I was coming through there with a load of lumber, coming from Pineland. I see the plat or map on the floor there that is supposed to represent the houses and railroad and streets and the other roads near where Joe Murray was killed." He also testified that when Joe Murray walked up to the gate, to go into the gate, Eli stepped back about two steps and shot him. Eli had the muzzle of his gun down "and he stepped back this way (indicating) and raised his gun and fired. . . . After the gun fired, he fell over inside the yard." He also testified as follows: Q. "Do you know whether the boy died or not?" A. "Yes, sir." Q. "He died?" A. "Yes, sir." Appellant testified: "When I shot him he threw his hand back that way; I didn't know whether it was going under his jumper or where it was going; I know he threw it back, and I aimed to defend myself. I was not mad then. I was cool and deliberate. I was standing up there talking; I was inviting his mother up to the little meeting I was going to have. I was no ways angry at all. I was cool and deliberate. I did not kill that boy because he cursed me. I want to tell the jury that I didn't kill him at that time because he cursed me. I didn't intend to kill him then at all; I aimed to stop him from shooting me; I didn't even intend to shoot when I shot." Witness Dan

White testified: "I know Eli Johnson. I remember the day that Joe Murray was killed. I was sitting on my gallery that day just like I am sitting here. I lived next to Carrie McNeal at that time. I saw the transaction at the time the boy, Joe Murray, was killed." He further testified: "The boy came on up and walked up there and reached at the gate to open it, and Eli was standing there, and just as he got inside the gate, Eli just came up with the gun that way—bumb. When the boy was killed he was standing just like I am. I do not know the position of his hands. I just saw him fall. I saw him when he caught hold of that gate, when he first walked up.. I didn't see him do anything with his hand." Witness also states that Eli backed off just about a step and had his gun just about in that position and said, " 'Joe, you put me in the dozen,' and the gun said 'bumb' and the boy fell. The boy did not run around by the corner of the house. He didn't run anywhere; he fell right down there."

This is the strength of the testimony with reference to whether deceased was dead. My brethren are of opinion that this sufficiently proves the corpus delicti. There is no evidence in this record of any witness or anybody having seen the body of deceased after the shooting. It was at a turpentine camp where there was quite a number of people. The mother of deceased, who was standing within a few feet of where the shooting occurred, was not placed upon the witness stand and is shown, in fact, to have left Texas and gone to another State. Why some witness was not placed on the stand who saw the body of deceased after it was killed is not explained.

Article 1084 of our Penal Code reads as follows: "No person shall be convicted of any grade of homicide *unless the body of the deceased or portions of it are found and sufficiently identified to establish the fact of the death of the person charged to have been killed.*" There are quite a number of decisions construing this statute and they are all to the same effect. These are all collated by Mr. Branch in his Ann. Penal Code, under article 1084, above quoted. It is not the purpose of the writer to review these cases. It may be that my brethren are correct, that the evidence is sufficient to show the deceased was killed and to comply with the article above quoted. The mind of the writer is not clear on this subject at all, but in consonance with the opinion of the majority this judgment will be affirmed.

*Affirmed.*