Douglas Lee WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 53568.

Court of Criminal Appeals of Texas.

Sept. 14, 1977.

Barry P. Helft, Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, Reed W. Prospere and Dan C. Guthrie, Jr., Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of aggravated robbery upon a

plea of not guilty. The jury assessed punishment at eight and one-half years' confinement.

At approximately 10:30 a. m. on June 4, 1975, Willard Butler was managing a 7-11 Store on Houston School Road in Dallas. Thomas Sullivan entered the store, stood by the checkout counter and told Butler that he was waiting for a friend. Several minutes later appellant entered the store and walked down one of the far aisles. Sullivan then told appellant, "Man, you can come on and get what you want." At that point appellant came to the checkout counter bringing an item which Butler rang up. Butler then noticed a pistol in appellant's left hand. At appellant's instructions, Butler began placing money from the cash register into a paper bag. Sullivan came behind the counter with a drawn gun and took Butler's money bag and shotgun. Both Butler and a customer who had entered the store during the robbery were forced to lie on the floor while the two men fled.

In his first ground of error appellant complains his warrantless arrest was invalid and therefore any evidence seized as a result of his arrest was inadmissible. Appellant argues that the arresting officer's decision to stop the vehicle in which he was a passenger was based completely on a police radio broadcast. It is appellant's contention that the State failed to show the officer causing the broadcast to be issued had probable cause to do so as required by *Colston v. State,* 511 S.W.2d 10, Tex.Cr.App. We do not agree.

On the morning of the robbery Jackie B. Doyal, of the Dallas Police Department, was patrolling the area where the robbery occurred. His attention was caught by a particularly clean metallic blue Corvair which was parked near the 7-11 Store with the driver's door slightly ajar. At the time Doyal thought the car had run out of gas. Five minutes later he heard the armed robbery call and immediately returned to the scene, by which time the Corvair had been moved.

Witnesses who had arrived at the store and remained in their cars while the robbery was taking place told investigating officers that two men had run behind the store in the direction of the street on which the Corvair had been parked. Shortly thereafter they also heard an automobile start in that direction. At this point Officer Doyal gave the investigating officers a description of the Corvair. Officer Charles Sanders of the Dallas Police Department arrived after the other investigating officers and searched the scene for physical evidence. On a foot trail behind the shopping center where the 7-11 was located and approximately 30 feet from the street where Officer Doyal had observed the Corvair, Sanders found the shotgun. A description of the Corvair was then broadcast as a possible getaway car.

Officer J. F. Berry testified that at approximately 10:45 or 11:00 a, m. he heard a broadcast describing the possible getaway car as a clean silver-blue Chevrolet Corvair, approximately a 1965 to 1975 model. The broadcast also included a description of the two men believed to be occupying the car. While Berry was eating lunch that afternoon he saw through the restaurant's window a very clean silver-blue Corvair occupied by two black males on the South Central Expressway. He had been looking for the car since the armed robbery broadcast that morning.

Berry and two other officers pursued the car. Officer Berry turned on his flashing red lights and, when the Corvair attempted to make a U-turn, forced it off the road. A pat-down search of appellant, the passenger in the car, revealed two pistols. Both suspects were then handcuffed and placed in patrol cars. During the search of the Corvair some rolls of coins and paper currency were found in the glove box. Officer Berry stated his sole purpose in stopping the Corvair was because the car and occupants matched the description he had heard on the radio broadcast.

The facts before us in the instant case resemble those of *Washington v. State,* 518 S.W.2d 240, Tex.Cr.App., in which the police officer who made the broadcast was at the

scene of the robbery shortly after it occurred, interviewed witnesses who had seen the getaway car and then testified at trial.

■ Here Officer Doyal observed a car on routine patrol. After hearing about a robbery in that same area, he returned and the car was gone. Other investigating officers interviewed witnesses at the scene who saw the two men run toward the street where the car had been parked and heard a car starting. Thus the investigating officers were able to get a description of the suspects from eye witnesses and of the possible getaway car from the observant Officer Doyal. As the result of their investigations, a description of the men and car was broadcast.

The observations of Officer Doyal, together with the information supplied by witnesses at the scene, were more than sufficient probable cause to support stopping the Corvair to question the occupants. See *Myre v. State,* 545 S.W.2d 820 Tex.Cr.App. As in *Guzman v. State,* 521 S.W.2d 267 Tex.Cr.App., the radioed police broadcast, based on probable cause reporting a felony and description of the suspects and the possible getaway car was sufficient to satisfy the requirements of probable cause under Art. 14.04, V.A.C.C.P.

■ Under the facts before us the officers were authorized to arrest appellant; the search incident to the arrest was authorized, and the fruits of the search were admissible into evidence. Appellant's first ground of error is overruled.

■ Next appellant complains his Fifth Amendment right to silence at the time of arrest was violated when the prosecutor asked Officer Berry, "Walker didn't say, 'Hey, police officers, I've got these two guns in my belt?'" Appellant's objection to this unanswered question was sustained and the jury was instructed to disregard the question; however, the trial judge overruled the appellant's motion for mistrial.

■ Generally the mere asking of an improper question will not call for reversal unless it results in obvious harm to the appellant. *Graham v. State,* 546 S.W.2d

605 Tex.Cr.App. Here the complained of question followed immediately after these inquiries by defense counsel:

"Q And when the car did stop, the driver got out and walked back to you, is that right?
A Yes, sir.
Q Didn't make any attempt to run or anything like that?
A No, sir.
Q And the passenger just sat in the car, is that right?
A Yes, sir.
Q And waited until the other officer told him to get out?
A Yes, sir."

We note that the matter was not pursued by the prosecutor. *Ashley v. State,* 527 S.W.2d 302. This fact situation does not present us with one of those extreme cases where it appears that the complained of question was clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Sheppard v. State,* 545 S.W.2d 816, Tex.Cr.App. The trial judge's prompt instruction to disregard was sufficient to cure error in asking the question.

■ In his final ground of error appellant argues the trial court erred by allowing the State to call appellant as a witness at the punishment phase of the trial. Appellant contends this action forced him to incriminate himself concerning two prior convictions and was fundamental error despite his failure to object. We do not agree.

Although not on all fours with the facts before us, the cases of *Stratman v. State,* 436 S.W.2d 144, Tex.Cr.App., and *Brumfield v. State,* 445 S.W.2d 732, Tex.Cr.App., are instructive. *Stratman* involved the defendant's waiver of jury trial in which the judge conducted a bifurcated trial to the court. During the guilt stage the defendant testified in his own behalf and admitted on cross examination that he had been convicted of three prior felonies. Following argument by counsel, the court announced that each side could reopen to put on evidence for the

court's consideration on punishment. At that point the defendant was called by the State over objection by his counsel. The defendant then identified the records of his prior convictions.

On appeal the defendant's contention that he had not been called for further cross examination but rather as an adverse witness at a separate hearing was rejected by this Court. In overruling defendant's claim that he had been compelled to incriminate himself in violation of his rights under the due process and equal protection clauses, Judge Woodley first noted that there was no statute requiring a separate hearing on punishment in a trial before the court. Judge Woodley, writing for the Court, went on to note that there would have been no reversible error had all the defendant's later testimony been elicited by the State on cross examination for impeachment purposes.

The plurality in *Brumfield*, while agreeing that *Stratman* was correctly decided, did not agree that when a defendant takes the stand at the trial on the issue of guilt and the State fails to utilize certain convictions available to it for purposes of impeachment of the defendant's credibility as a witness in his own behalf, the State would then be permitted to recall the defendant at the *penalty* hearing and interrogate him about such convictions in order to prove his prior criminal record. The plurality was concerned that such a reading of *Stratman* would permit an extension of its holding to allow the recall of a defendant as a witness for the State if the evidence would have been admissible at the guilt stage for impeachment purposes, even though it was later sought to be admitted for quite different purposes. We agree with the plurality's concern and would adopt a decision to overrule *Stratman* to the extent of any conflict.

However, as noted earlier, the facts presented here differ from those presented in either *Stratman* or *Brumfield*. Unlike *Stratman*, the case before us involves a trial by jury. Unlike *Brumfield*, there was no objection made to appellant's recall to the stand.

Finding no reversible error, we affirm the judgment of the trial court.

DOUGLAS, J., concurs in the results.