**Martin Luther ADAMS, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–83–150–CR.**

Court of Appeals of Texas,
Corpus Christi.

Jan. 1, 1984.

Rehearing Denied Feb. 16, 1984.

Eric Brown, Tinker & Tor, Corpus Christi, for appellant.

T.R. Bandy, Jr., County Atty., Corpus Christi, for appellee.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

## OPINION

BISSETT, Justice.

On the Court's own motion, our opinion of December 29, 1983 is withdrawn and this opinion is substituted for it.

Appellant was convicted of obscenity and the jury assessed punishment at 270 days in the Nueces County Jail and a fine of $1,800.00. Appellant, in his first four grounds of error, complains that the trial court erred in overruling his motion to quash the information.

The information charged that appellant "did then and there, knowing the content and character of certain material, to-wit: one (1) motion picture, the title of which is unknown to affiant, to be obscene, unlawfully and knowingly promote said obscene material by then and there exhibiting said obscene material to R. Vipond, which material depicts ultimate sexual acts, to-wit: sexual intercourse."

■ Appellant argues that the information failed to give him adequate notice of the motion picture the State intended to use against him at trial. Evidence adduced at the pre-trial hearing showed that the State had seized two films from the appellant's place of business and that both films were untitled. Although appellant continually refers us to the evidence adduced to show that notice was inadequate, the Court of Criminal Appeals has consistently held that it is improper to examine the record of the case to determine whether the charging instrument provides adequate notice since the notice must come from the facts found and alleged in the charging instrument itself. *Bonner v. State*, 640 S.W.2d 601 (Tex.Cr.App.1982); *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) (Opinion on

State's Motion for Rehearing). Thus, we must test the adequacy of the allegation by its own terms.[1]

In *American Plant Food Corporation v. State*, 508 S.W.2d 598, 599 (Tex.Cr.App. 1974), the Court of Criminal Appeals noted that an indictment or information must allege on its face the facts necessary 1) to show that an offense was committed, 2) to bar subsequent prosecution for the same offense, and 3) to give the defendant precise notice of the charge. The Court also emphasized that the test to judge the validity of a motion to quash is separate and distinct from the test used to determine whether the charging instrument is fundamentally defective.

■ Appellant argues that the information failed to give him adequate notice or sufficient facts to bar a subsequent prosecution. Since appellant's claim was properly asserted in a pre-trial motion to quash, which included an adequate statement of the manner in which he alleged the notice was deficient, fundamental constitutional protections were invoked. *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1978). Because of the notions of fairness that require adequate notice of the nature of the charges against the accused in our system of justice, a timely claim of inadequate notice requires careful consideration *from the perspective of the accused. Drumm* at 560 S.W.2d 946. The accused is not required to anticipate any and all variant facts the State might seek to establish, but by his motion or exception *may insist* "on a specific allegation of what the State will rely upon to convict." See *Amaya v. State*, 551 S.W.2d 385 (Tex.Cr.App.1977).

Appellant was convicted of obscenity under Sec. 43.23(c) TEX.PENAL CODE ANN. (Vernon Supp.1982) which provides:

"A person commits an offense if, knowing its content and character, he:

---

1. By operation of Art. 21.12 TEX.CODE CRIM. PROC.ANN. (Vernon 1966) rules as to indict-

ments likewise apply to informations.

(1) promotes or possesses with intent to promote any obscene material or obscene device."

Appellant was charged with exhibiting one motion picture of unknown title which depicted ultimate sexual acts. The allegations in the information are thus more specific than the language of the statute. The issue we must resolve is whether the degree of the descriptive averments in the information gave the appellant sufficient notice of the charges against him.

The State's allegations are more descriptive than the statute in three ways. Through its charging instrument, the State notified the defendant that (1) the material is a motion picture; (2) that the material depicts ultimate sexual acts (sexual intercourse); and (3) that the State is prosecuting for the exhibition of only one film. The State also alleged that the title of the motion picture was "unknown to affiant." We note that the information did not allege that the picture was untitled but only that the title was unknown. Thus, the State notified the appellant that he was charged with exhibiting one motion picture which depicts sexual intercourse.

■ To obtain a conviction for obscenity, the State must prove that: 1) the average person, applying contemporary community standards, would find the material, taken as a whole, appeals to the prurient interest in sex; 2) the material depicts or describes patently offensive sexual acts; and 3) taken as a whole, the material lacks serious literary, artistic, political, and scientific value. These factors impose quite a burden on the State and afford the accused a variety of defensive tactics *based upon the material itself.* Without specific knowledge of the material relied upon by the State, the accused is foreclosed from utilizing the variety of defenses which relate to the specific material relied upon for prosecution. At the pre-trial hearing, appellant argued that the State could have distinguished one film from another by specifying the booth number, or film type, or by describing the actors involved. We agree. However, an insufficiency in the allegations of an indictment which is a defect of form, will not require a reversal of the judgment unless it prejudices the substantial rights of the defendant. TEX.CODE CRIM.PROC.ANN. Art. 21.19 (Vernon 1966). *Craven v. State,* 613 S.W.2d 488 (Tex.Cr.App.1981). Accordingly, the Court of Criminal Appeals has uniformly held that prejudice caused by a defect of form cannot be determined without reviewing a statement of facts. *Craven* at 490; *Taylor v. State,* 134 Tex.Cr.R. 561, 116 S.W.2d 392 (1939); *Van Horn v. State,* 143 Tex.Cr.R. 55, 156 S.W.2d 987 (1941).

■ We therefore have reviewed the statement of facts and the evidence presented. The State seized two films from coin operated booths in appellant's place of business. Both films were untitled, both were seized at the same time; and both depicted acts of sexual intercourse and oral sex. We have reviewed the films in their entirety. Each film explicitly shows acts of sexual intercourse and oral sex. Except for the participants who could be identified, the films are similar in content. The entire footage of each film presents explicit sexual activity of a type barred by statute, and the films are so similar that one could not conceivably find one film obscene and the other film not.

Appellant argues that the lack of notice prevented him from defending himself against the State's allegations that the one film shown to convict him lacked serious literary, artistic, political, or scientific value. However, we are unable to conjecture a scenario in which the substantial rights of the appellant were prejudiced. The films are so similar (in that they depict essentially the same conduct) that appellant could not possibly have defended on a theory applicable to one film but not the other.

*Bonner v. State,* supra, which appellant cites in support of reversal, is actually supportive of the opposite position with respect to the analysis employed to determine whether appellant was harmed. In *Bonner,* the defendant was charged with bur-

glary of a vehicle. The defendant challenged the indictment on notice grounds because the evidence showed that three vehicles belonging to the victim were implicated. The State's evidence showed that only one vehicle had been broken into or entered; thus appellant had a valid defense to burglarizing two of the three implicated vehicles. The Court of Criminal Appeals held that the trial court erred in overruling appellant's challenge to the indictment and held that appellant was harmed because the defendant's opportunity to defend himself was diminished. The conviction was therefore reversed.

In *Hill v. State*, 544 S.W.2d 411 (Tex.Cr. App.1977) the same analytical approach used in *Bonner* resulted in the Court of Criminal Appeals affirming the defendant's conviction. The Court found the indictments were sufficient to allow the defendant to prepare a defense.

In *Goodwin v. State*, 514 S.W.2d 942, 945 (Tex.Cr.App.1974), the Court observed:

"Appellants' contention that the court cannot find the material obscene when the State has offered no expert evidence and the defense has presented expert testimony as to its non-obscenity was discussed in *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). There, the United States Supreme Court clearly stated that the materials themselves are sufficient for the determination even though the defense has introduced countervailing testimony."

Under the circumstances of the present case, the defect in the charging instrument did not restrict the appellant's opportunity to defend against the prosecution. Accordingly, appellant's first four grounds of error are overruled.

█ In his eighth ground of error, appellant contends that the trial court erred in denying his challenge for cause to prospective juror Jennie Lee Jay "in that from hearsay or otherwise, she had established in her mind such a conclusion as to the guilt or innocence of the Appellant as would influence her in her actions in find-

ing a verdict." The ground of error does not comport with the objection made at trial and therefore nothing is presented for review. *Porter v. State*, 623 S.W.2d 374 (Tex.Cr.App.1981). Appellant's eighth ground of error is overruled.

█ In his seventh ground of error, appellant complains that the trial court erred in his challenge for cause to prospective juror Jennie Lee Jay because she was biased and prejudiced against the law applicable to the case. During the voir dire examination of Jennie Lee Jay she expressed some difficulty in being able to apply contemporary community standards and in being able to find that explicit sexual material had any serious literary, artistic, political, or scientific value. His objection at trial comports with this ground of error and was sufficient to give the trial court notice of his specific complaint. In reviewing the record, however, we have found that appellant has failed to preserve his alleged error. To preserve error the appellant must exhaust his peremptory strikes and assert at trial that he was forced to accept a juror whom he found objectionable or show that a request for additional peremptory strikes was denied. *Sifford v. State*, 505 S.W.2d 866 (Tex.Cr. App.1974). Appellant did not request additional peremptory strikes. Appellant's counsel stated to the court:

"Your Honor, I would like to state for the record that the Defendant has struck Juror Number Seven, Nine and Ten, with peremptory challenges. Juror Number Nine, the Defendant challenges for cause, and was required, because of the Court's denial for that challenge for cause, to exercise peremptory challenge on her, and there are other jurors objectionable to the Defense that are on the jury that we were deprived of the right to strike them, because of the Court's denial of the challenge for cause of Juror Number Nine. I would like the record to reflect that."

This objection is virtually identical to the objection made by the defendant's counsel

in *Moreno v. State,* 587 S.W.2d 405 (Tex. Cr.App.1979). The objection there stated:

"There are other jurors left on the prospective list that are objectionable to these defendants and, to their attorneys, whom they would strike as prospective jurors were they not compelled to exhause (sic) their twelve challenges allowed by the Court by striking the said two named jurors, John J. Townsend, Jr. and Thomas R. Morin."

Presiding Judge Onion, writing for the Court of Criminal Appeals, stated:

"We do not conclude that such a blanket statement (appellant's objection) is sufficient to invoke the *Wolfe* rule. Here there is no showing that any juror who was objectionable served on the jury. *The asserted fact that certain other jurors, without designation, were objectionable was certainly not sufficient in and of itself to show that any objectionable juror served on the jury that convicted the appellants."* (emphasis ours).

The Court reiterated that a defendant must at least state that a particular juror or jurors are objectionable to him. *Moreno,* 587 S.W.2d at 408.

■ *Wolfe v. State,* 147 Tex.Cr.R. 62, 178 S.W.2d 274 (1944) held that where an accused has been compelled to exhaust peremptory challenges and accept an objectionable juror because a challenge for cause was improperly overruled, there is reversible error even though the accused did not show in what manner the juror was objectionable to him or that the juror was unfair or partial. This is still the proper rule. As noted in *Moreno,* however, to invoke the rule, the accused must specify *which juror or jurors* are objectionable although he need not state reasons.

In the present case, counsel's objection amounted to no more than a blanket statement that other jurors were objectionable. Appellant has failed to preserve his alleged error.

Even if appellant had preserved his error, no error is shown. The individual voir dire examination of Jay shows the following:

## PROSPECTIVE JUROR JENNIE LEE JAY

BY MR. WESTERGREN:

Q Mrs. Jay, do you feel like you can apply the community standards:

A Yes, I think I can.

Q And I believe you also had this reaction about the adult versus the children, and can you accept the proposition that the State of Texas does have a stricter standard in two ways for dealing with dissemination among children. It won't come up in the case, but I'm stating it.

A We—if it's dealing with adults, I think we are capable of making up our own minds, but when it's children, no, definitely not.

Q What do you mean by, "our own minds?" Do you mean the individual that goes into the—

A I think that the community is a lot of different minds—

Q Yeah.

A —I think that we ought to be able to go by the standard of the law.

Q I guess what I'm really saying when I ask you about a community standard, do you believe that society has a right to set some standards?

A Yes, I do.

Q Below which nothing can go?

A Yes, I do.

Q And we may—some people may place it at a rather angelic level, and I assure that's not the Prosecution's intent. Others might set it at a much baser level. That is what your job will be, to make a decision where it is. Can that be done?

A Yes, it can.

Q Thank you very much.

BY MR. BROWN

Q Mrs. Jay, one of my questions earlier was about anybody having the view that material depicting sexual matters had led to any moral decay in our society. You made some type of response. I'm not sure what your feelings are in that regards?

A I think it has.

Q What way do you feel like that?

A Well, I think if certain people view certain things, it gives them certain ideas.

Q Do you feel that viewing explicit material may lead to other problems?

A Yes, I do.

Q Do you feel like that in trying to determine what the community standard is, that you could consider that some adults, individuals, feel this is, feel material like this is not obscene, can you consider that?

A That other individuals would not?

Q Some individuals in the community, some adults.

A Would not consider it obscene?

Q Yes.

A Yes, I believe other individuals would not see it obscene.

Q Okay. And on the other end of the scale, I assume you probably know, or heard of people that consider mere nudity as being personally offensive or obscene to them?

A Well, its according to where they are nude.

Q Okay. If there's some material that explicitly depicts sexual relations, sexual intercourse, or oral sex, could you ever find that that material has some literary, artisic, (sic) political, or scientific value?

A I don't think so.

MR. WESTERGREN: Your Honor, Could I ask that he give that question the entire legal test in the entirety of the question?

THE COURT: Certainly. The question must be submitted in its entirety.

Q (By Mr. Brown) What I'm getting at, is this. If you were to view a film, a magazine, a book, and it was to have explicit depictations of oral sex and sexual intercourse, could you ever find that material, taken as a whole, has any literary, or artistic, or political, scientific value?

A Well, other than spreading disease, I don't think so.

Q Thank you very much.

\* \* \* \* \* \*

## PROSPECTIVE JUROR JENNIE LEE JAY

MR. BROWN

Mrs. Jay, I don't want you to think I'm picking on you. You indicated earlier that if you were to view a film or book, or magazine that had explicit depictations of sexual relations, or sexual intercourse, or oral sex, that you couldn't find that material, taken as a whole, had any serious literary, scientific, political, or artistic value; I believe you indicated that, is that correct?

A That's correct.

Q Is it your feeling that if it's that explicit, that it just doesn't have value, or couldn't have that value?

A I think you said, "medical," too.

Q Scientific, I believe.

A Doesn't that kind of include medical, scientific?

Q I would assume it does.

A Well, I don't know, ask that question again.

Q Let's assume that you were to, on a jury that you—there was a book, or magazine, or film explicitly showed sexual relations, oral sex, and sexual intercourse. Could you ever find that that had some, taken as a whole, the whole work, had some serious literary, artistic, political, or scientific value?

A Well, what I have read, scientific, if that includes medical, that is a very known fact that what I've read from the newspaper that it increases the herpes.

Q Well, I'm not sure I understand— what I'm getting at, is the definition of obscenity requires that it lacks any of those values. What I'm saying is, if you were to see a book or film, or magazine that had explicit sexual relations, and I'm talking about, in this case, sexual intercourse, and oral sex, could you ever find that that had some of the value, that it had some literary, scientific, political?

A Do you mean that it would help anybody?

Q Do you think that it would have value?

A I don't think that it would have any value to anybody, but I think people have the right, adults have the right to see and go in places that they think they want to go in. But, as long as it's not underneath the adults, the children.

MR. BROWN: I'll pass the juror.

Q (By Mr. Westergren) It's really pretty hard to answer these questions in the abstract, isn't it, Mrs. Jay? I mean, you haven't seen the picture. Wouldn't it be easier for you to answer the question he just asked if you had actually seen what it was we were attempting to prosecute?

A Yes, of course, I have seen pictures that he's talking about; I've seen them. And, as far as I'm concerned, I don't like them, but if it's community, they set a level, I don't know where the level would be, though I don't know how much lower you could go.

Q That's what the juror's job is going to be, to set the standard.

A I would continue to be with the community.

TEX.CODE CRIM.PRO.ANN. art. 35.-16(c)(2) (Vernon Supp.1982–83) provides that a challenge for cause may be made by the defense if the prospective juror has "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or of the punishment thereof."

 Bias against any of the law upon which the defendant is to rely is ground for a challenge for cause. *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974). In viewing the voir dire examination of Jennie Lee Jay as a whole, as we are required to do, *Evert v. State*, 561 S.W.2d 489, 491 (Tex.Cr.App.1978), we conclude that Jennie Lee Jay was not biased against the law of the case. We hold that the trial court did not err in refusing to strike her for cause. Appellant's seventh ground of error is overruled.

We have carefully considered all of appellant's remaining grounds of error. They are overruled.

The judgment of the trial court is AFFIRMED.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

In his motion for rehearing, appellant contends for the first time that the trial court's charge to the jury contained fundamental error. He further contends that the trial court's charge to the jury erroneously assumed and established two essential facts. The application paragraph reads as follows:

"Therefore, if you believe from the evidence beyond a reasonable doubt that the Defendant, Martin Luther Adams, in Nueces County, Texas, on or about August 26, 1982, did then and there unlawfully, knowing the content and character of certain material, to wit: one (1) motion picture, the title of which is unknown to affiant, to be obscene, unlawfully and knowingly promote obscene material by then and there exhibiting said obscene material to R. Vipon, which material depicts ultimate sexual acts, to wit: sexual intercourse, you will find the Defendant guilty as charged.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

 Appellant asserts that this paragraph of the charge was fundamentally defective "because it assumed as established, two essential facts: (1) that the motion picture in question is obscene, and (2) that it depicts ultimate sexual acts, to wit: sexual intercourse." Appellant points out that in *Andrews v. State*, 652 S.W.2d 370 (Tex.Cr.App.1983), the Court of Criminal Appeals held the application paragraph of that charge was erroneous for essentially the same reasons. In *Andrews*, however, the defendant timely and properly objected to the application portion of the charge. In the instant case, no objection was made at trial.

Appellant also cites *Grady v. State*, 634 S.W.2d 316 (Tex.Cr.App.1982), where an error of a similar sort caused the defendant to contend on appeal that an error in the trial court's charge "removed from the jury's consideration the issue of whether or not phentermine is an isomer of methamphetamine." The Court of Criminal Appeals, after concluding that the charge was erroneous, held that the particular error was not fundamental.

Likewise, the charge in the present case, while not adequately drafted, is not fundamentally defective. In the future, the trial court should submit to the jury a charge in compliance with the Court of Criminal Appeals' suggested charge as set forth in *Andrews*, 652 S.W.2d 370 at 374. Appellant's first ground for rehearing is overruled.

Appellant's remaining grounds raised on his motion for rehearing have also been considered, and they are also overruled.