**Charles Otis HERRING, Appellant,**

v.

**The STATE of Texas, Appellant.**

**No. 13–87–422–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1988.

Rehearing Denied Oct. 13, 1988.

James S. Munson, Wharton, for appellant.

Daniel W. Shindler, Bay City, Jim Vollers, Austin, for appellee.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, Charles Otis Herring, guilty of aggravated robbery. Two prior felony offenses were alleged in the indictment for enhancement purposes. The jury assessed punishment in the Texas Department of Corrections for life. We affirm.

At 6:15 a.m. on May 15, 1987, Officer Marcaurele was called to the scene of an armed robbery at the D & D Grocery. During his investigation, Marcaurele learned that the suspect had used a short barrel rifle or shotgun and stole ninety-three one dollar bills, sixteen five dollar bills, eight ten dollar bills, sixty-two quarters, sixty-three dimes, seventy-one nickels, sixty-five pennies, and nine one dollar food stamps. During the robbery, the suspect cut the telephone hand set cord and then fled the scene. Marcaurele testified that the victim "felt" the suspect was a black male. She described him as being five feet five to five feet six inches tall, medium build, wearing a brown jacket, blue jeans, dark shoes, one glove and a stocking over his head. Marcaurele learned that the robbery occurred shortly before 6:14 a.m. that day.

Officer Marcaurele testified that this robbery was very similar to other area robberies of which he had knowledge. These similarities were that each robbery occurred in the early morning; each involved a convenience store; each suspect had the same physical description; each wore a stocking over his head; and during each robbery, each suspect cut the telephone hand set cord. Officer Marcaurele also testified that in one of these robberies, the robber used a pair of orange-handled scissors to cut the telephone hand set cord.

In an attempted robbery in Needville, the store owner followed the vehicle used by the would be robbers. This vehicle was described as a brown Plymouth occupied by two black males. The store owner got the Plymouth's license number which was later determined to be 871–MWV. The suspect who attempted the robbery also had his face covered.

Officer Marcaurele sent out a teletype for all units to "be on the lookout" for the brown Plymouth. Shortly thereafter, he received a call informing him that a possible suspect vehicle involved in the robbery of the D & D Grocery was heading towards the D & D Grocery on Highway 71. At 7:00 a.m. that same day, Officer Marcau-

rele stopped the brown Plymouth with license number 871–MWV on Highway 71. The Plymouth was occupied by two black males. Marcaurele ordered them out of the vehicle and patted each down for weapons. He found no weapons during the pat down. A roll of money was found on the passenger, Mr. Orange. Marcaurele identified the driver of the Plymouth as appellant and testified that he fit the description of the suspect involved in the D & D Grocery robbery. Marcaurele made a visual inspection of the Plymouth and saw in plain view on the driver's side floorboard a pair of orange-handled scissors. When Marcaurele picked up the scissors, he noticed a wad of money stuffed between the back seat and back door on the driver's side. At this time, appellant was arrested for the robbery of the D & D Grocery. Marcaurele then called a tow truck and performed an "inventory search" of the vehicle.

A search of the trunk revealed a red vinyl zipper bag containing a short barrel, .22 caliber rifle. This bag also contained one roll of quarters, two rolls of pennies, and one roll of nickels. A search of the glove box revealed twenty-two quarters, thirty-one nickels, thirteen dimes, and nineteen pennies.

Appellant sought to suppress the evidence seized in the search of the vehicle he was driving at the time of the stop. In his first point of error, appellant argues that the trial court erred in overruling his motion to suppress evidence seized as a result of a warrantless search of his vehicle. He argued that the seizure of the evidence was unreasonable in violation of U.S. Const. Amends. IV and XIV and Tex. Const. art. 1, § 9 (Vernon 1984).

A police officer may, in appropriate circumstances, and in an appropriate manner, approach an individual for the purposes of investigating possible criminal behavior even though he does not have probable cause to effectuate an arrest. Terry v. Ohio, 392 U.S. 1, 21 (1968). When a police officer stops a person driving a motor vehicle on the basis of his possible involvement in a criminal offense, we look at the totality of the circumstances or the "whole picture" in determining whether the stop was lawful. The detaining officer must have a particularized and objective basis to suspect the person stopped of criminal activity. Two elements must exist in order to effectuate a lawful stop. First, you look to see if the police officer drew inferences and made his deductions based upon his observations, information from police reports, and consideration of the "mode of operation" exhibited by certain kinds of lawbreakers. Second, this procedure must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. *See United States v. Cortez*, 449 U.S. 411, 418–419, 101 S.Ct. 690, 695–696, 66 L.Ed.2d 621 (1981) and *Campbell v. State*, 644 S.W.2d 154, 159 (Tex.App.—Austin 1982), pet ref'd, 647 S.W.2d 660 (Tex.Crim. App.1983).

We find it reasonable that on learning that the Plymouth was seen traveling on Highway 71 towards the D & D Grocery, Marcaurele would stop the vehicle. He possessed information that linked the Plymouth to an attempted robbery in Needville which had a similar *modus operandi* and a suspect with a similar physical description as did the robbery of the D & D Grocery. Also, the Plymouth was sighted shortly after the robbery occurred on Highway 71 which runs adjacent to the D & D Grocery. While the suspect who had committed the robbery was not reported to have left the store in a motor vehicle, Marcaurele reasonably assumed the possibility that his flight would be continued by means of a motor vehicle. Therefore, the "whole picture" contained sufficient facts and circumstances to raise a suspicion that appellant was engaged in wrongdoing. We hold that Marcaurele's decision to stop the Plymouth for possible complicity in the armed robbery of the D & D Grocery was a decision which issued from a judgment formed in the requisite manner set out in *Cortez.*

When Officer Marcaurele saw the scissors and the wad of cash, and determined that appellant's physical description fit that of the suspect involved in the robbery of the D & D Grocery, his reasonable

suspicion evolved into a reasonable belief that he had the suspect in the robbery of the D & D Grocery. At this point, he had probable cause to arrest appellant for the armed robbery at the D & D Grocery. *See Walker v. State,* 555 S.W.2d 454, 456 (Tex. Crim.App.1977); *Guzman v. State,* 521 S.W.2d 267, 269 (Tex.Crim.App.1975); *see also Campbell,* 644 S.W.2d at 161.

■ As an incident to appellant's arrest, the officer was authorized to conduct a warrantless, roadside search of the vehicle, including the contents of the glove box and trunk, for weapons and evidence of the robbery. The rule is that a police officer may search an automobile without a warrant where there are both exigent circumstances and probable cause. *United States v. Reyes,* 792 F.2d 536, 538 (5th Cir.1986), *cert. denied,* 479 U.S. 855, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986). Police officers have the right to search an entire vehicle when they have probable cause to believe there is contraband in the vehicle but do not know where it is located. The knowledge of the contraband constitutes an "exigent circumstance" under the "automobile exception" to the warrant requirement. *United States v. Ross,* 456 U.S. 798, 804–826, 102 S.Ct. 2157, 2162–2173, 72 L.Ed.2d 572 (1982); *Harper v. State,* 704 S.W.2d 546, 548 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd). Officer Marcaurele had probable cause to search the Plymouth based upon his knowledge that a weapon was used during the robbery and the probability that the weapon as well as other evidence may be somewhere inside the vehicle. *See Esco v. State,* 668 S.W.2d 358, 364–366 (Tex.Crim.App.1982) (on rehearing). The trial court properly overruled appellant's motion to suppress evidence which was seized by Marcaurele as a result of the search. Appellant's first point of error is overruled.

■ In his second point of error, appellant argues that the trial court erred in not granting a mistrial during voir dire examination.

During voir dire examination, the State mentioned to the jury panel that it hoped to present evidence that appellant had written a letter to Mr. Orange, who was in jail. (Orange was the passenger in the brown Plymouth automobile). The State mentioned that in this letter appellant called Orange the "look-out man." The State then said that appellant called Orange this name because they thought he served as a lookout when appellant went into the D & D Grocery.

Appellant objected, requested that the jury be instructed, and moved for a mistrial. The trial court instructed the jury but denied a mistrial. The trial court had previously granted appellant's motion in limine, preventing the State from exhibiting evidence before the jury prior to offering any item into evidence.

A mistrial will not be granted during voir dire unless the statement complained of injects injurious and prejudicial matters before the panel which are reasonably calculated to prevent a fair trial before an impartial jury. *See Pennington v. State,* 172 Tex.Cr.R. 40, 353 S.W.2d 451, 452 (1962). Error in admitting improper evidence may be corrected by a withdrawal and an instruction to disregard it except in extreme cases where evidence is clearly calculated to inflame the mind of the jury and suggests the impossibility of withdrawing the impression produced on their minds. *Waldo v. State,* 746 S.W.2d 750, 752 (Tex.Crim. App.1988). These statements were not so injurious that they would require a mistrial. Moreover, the trial court's instruction cured any possible error.

By the same point of error, appellant complains of questions asked of him during cross-examination. However, appellant's point of error presented on appeal is not the same as his objections raised during trial. Therefore, nothing is presented to us for review. *See Burdine v. State,* 719 S.W.2d 309, 319 (Tex.Crim.App.1986); *see also Adams v. State,* 669 S.W.2d 339, 343 (Tex.App.—Corpus Christi 1984), *aff'd on other grounds,* 707 S.W.2d 900 (Tex.Crim. App.1986). Appellant's second point of error is overruled.

■ In his third point of error, appellant argues that the trial court erred in not

granting his motion for continuance. Appellant stated in his motion for continuance that he did not have the transcript of the pretrial hearing. He also stated that this transcript was needed in the defense of his case in order to impeach the State's witnesses. The granting or denial of a motion for continuance lies within the sound discretion of the trial court. Absent a showing of an abuse of discretion, this Court will not reverse the judgment on appeal. *Hernandez v. State*, 643 S.W.2d 397, 399 (Tex.Crim.App.1982), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983). A trial court does not abuse its discretion in overruling a motion which shows on its face that the continuance was sought to obtain impeachment testimony. *Keel v. State*, 434 S.W.2d 687, 689 (Tex.Crim.App.1968); *Cooper v. State*, 509 S.W.2d 565, 568 n. 2 (Tex.Crim.App.1974). Appellant's third point of error is overruled.

■ In his fourth point of error, appellant argues that the trial court erred in denying his exceptions to the indictment. We note that the record does not reveal whether or not a hearing was ever held on appellant's exceptions to the State's indictment. Appellant argued in his exceptions to the State's indictment that there was a fatal variance between the complaint and the charging instrument. We are unable to locate the complaint in the record.

Appellant has the duty to ensure that the record before the appellate court contains all materials necessary for appellate review. *See Soliz v. State*, 693 S.W.2d 518, 519 (Tex.App.—Corpus Christi 1985, no pet.). Since these materials are not before us, there is nothing presented for our review. The point of error is overruled.

■ Appellant next objected that his prior convictions used for enhancement are void. Ten of these exceptions attack the indictments. Two exceptions attack the complaints. Three of these exceptions relate that: 1) the trial court failed to sign an agreement to stipulate testimony; 2) that there is no charging instrument listing witnesses; and 3) that an information recites an incorrect court number. There is no requirement that a charging instrument be included along with the evidence admitted for enhancement purposes. *Raetzsch v. State*, 745 S.W.2d 520, 523 (Tex.App.—Corpus Christi 1988, no pet.). Moreover, a prior conviction alleged for enhancement may be collaterally attacked only if it is void or if it is tainted by constitutional defect. Appellant's exceptions fail to raise either of these grounds. Less substantial problems in a prior conviction may not be raised by collateral attack. It is irrelevant that such problems would have resulted in a reversal had they been presented for appeal. *Galloway v. State*, 578 S.W.2d 142, 143 (Tex.Crim.App.1979).

■ Appellant also objected that the indictment in the instant case was vague and it failed to state an offense for which appellant could have been charged or convicted. The indictment stated that:

> Charles Otis Herring ... on or about the 15th day of May A.D. 1987, ... did then and there intentionally while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten and place Dora Mican in fear of imminent bodily injury and death, and the defendant did then and there use and exhibit a deadly weapon, to wit; a firearm; ....

We find that this language is not vague and does state an offense for which appellant could have been charged or convicted. *See Turner v. State*, 673 S.W.2d 688, 690 (Tex.App.—Texarkana 1984, pet. ref'd); *Rohlfing v. State*, 612 S.W.2d 598, 602 (Tex.Crim.App.1981). Appellant's fourth point of error is overruled.

■ In his fifth point of error, appellant argues that the trial court erred in not granting a mistrial after a State's witness made statements about prior robberies. During cross-examination by appellant, Officer Marcaurele testified that he had knowledge of other robberies that matched the same *modus operandi*. The trial court instructed the jury to disregard this testimony.

Evidence of an extraneous offense is never admissible unless proof is offered that the accused committed it. If evidence

of an extraneous offense is admissible under one of the several exceptions, the offense must be proved, and it must be shown that the accused was the perpetrator. *Govan v. State*, 671 S.W.2d 660, 663 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). In the instant case, neither a crime nor a perpetrator was shown. The officer's testimony implied that appellant may have committed several robberies. *See Govan*, 671 S.W.2d at 663. However, we do not find that this testimony amounted to error that was not cured by the trial court's instruction.

Error in admitting improper evidence may be corrected by a withdrawal and an instruction to disregard it except in extreme cases where the evidence is clearly calculated to inflame the minds of the jury and suggests the impossibility of withdrawing the impression produced on their minds. Therefore, testimony referring to or implying that an accused allegedly committed an extraneous offense may be rendered harmless by a trial court's instruction to disregard. *Coe v. State*, 683 S.W.2d 431, 436 (Tex.Crim.App.1984). We hold that this testimony was not calculated to inflame the mind of the jury and that any error was rendered harmless by the trial court's instruction. Moreover, appellant cannot now complain of testimony he first elicited on cross-examination. *Ingham v. State*, 679 S.W.2d 503, 507 (Tex.Crim.App.1984). Appellant's fifth point of error is overruled.

■ In his final point of error, appellant argues that the trial court erred in failing to grant a mistrial in response to the State's improper jury argument.

In its closing argument during the guilt/innocence phase, the State questioned why appellant did not call Mr. Orange to testify on his behalf. The trial court instructed the jury to disregard this comment. The State may comment in its final argument on an accused's failure to call a competent and material witness, including a co-defendant, when it is shown that the witness was available to testify on the accused's behalf, but was not called to do so. *Albiar v. State*, 739 S.W.2d 360, 363 (Tex. Crim.App.1987); *Winkle v. State*, 506 S.W.

2d 891, 897 (Tex.Crim.App.1974), *cert. denied*, 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (1974). The failure to produce available evidence justifies an inference that it was unfavorable to the accused. *Albiar*, 739 S.W.2d at 363. Appellant denied any involvement in the robbery and stated that Mr. Orange was with him prior to and at the time of the stop. He also testified that the food stamps found on Orange at the time of the stop were won during a dice game which he and Orange attended. (Food stamps were stolen during the robbery of the D & D Grocery). He also testified that both he and his lawyer spoke with Orange personally about two days prior to trial. We find that Orange was available and that his testimony would have been material to appellant's defense. Therefore, the State's argument was proper. Moreover, any error that may have occurred was cured by the trial court's instruction to disregard.

■ By this same point of error, appellant also complains that the State, in its closing argument during the guilt/innocence phase, questioned why appellant did not introduce a pair of "jeans" into evidence. Appellant's objection was sustained. We note that appellant, in his closing argument, argued that the State did not introduce the jeans into evidence because they were favorable to appellant. The jeans were in the State's possession. The State may also comment on an accused's failure to present evidence on his own behalf. *Thomas v. State*, 638 S.W.2d 481, 483 (Tex.Crim.App.1982). Furthermore, the State's comment was invited by appellant's previous argument. We find the State's comment permissible as appellant opened the door by his argument, and we refuse to permit him to benefit from an argument which he invited. Appellant's sixth point of error is overruled.

The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

■ On motion for rehearing, appellant, Charles Otis Herring, argues that we

should have applied the rule stated in *Billie v. State*, 605 S.W.2d 558 (Tex.Crim.App. 1980) in determining whether the trial court properly denied his motion for continuance. Appellant, Charles Otis Herring, states in his motion for continuance that he requested a transcript of the pretrial hearing on August 28, 1987. However, we are unable to locate any written motion or request for the transcript of the pretrial hearing in the record that is before us. Only the motion for continuance.

The rule on appeal is that in order to complain of a trial court's ruling, the record must show that such request or motion was made in writing and included in our transcript. The record must further show the trial court's ruling on such motion in order for us to determine if reversible error was present as contended.

Appellant's motion for rehearing is overruled.